YADKIN VALLEY BANK & TRUST CO.; John Everett Hutchinson; Ruth Laura Davis Hutchinson, Plaintiffs-Appellants,

v.

Linda McGEE, Trustee, Defendant-Appellee,

and

Northwestern Bank; Chore Boy, Inc.; Dairymen, Inc., Defendants.

No. 86–1685.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1987.

Decided May 22, 1987.

Daniel J. Park, Elkin, N.C., on brief, for plaintiffs-appellants.

R. Bradford Leggett, Allman, Spry, Humphreys, Leggett & Howington, Winston-Salem, N.C., on brief, for defendant-appellee.

Before CHAPMAN, and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

This appeal arises from the claim by appellants, Yadkin Valley Bank and Trust Company, and John and Ruth Hutchinson, against Linda McGee, the trustee in bankruptcy of the Hutchinson estate. Appellants in this action allege that the trustee breached her duties by failing to expeditiously sell the Hutchinsons' Dairy Farm while it remained intact. The bankruptcy court granted summary judgment in favor of the trustee, and the district court affirmed this finding stating that a trustee is protected by absolute immunity. Because we hold that the immunity of a bankruptcy trustee is not absolute, we reverse and remand this case to the bankruptcy court for further factual findings.

I.

On July 15, 1981, John and Ruth Hutchinson (debtors), filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Middle District of North Carolina. Appellee McGee is the duly authorized trustee for the Hutchinsons. At the time of filing, the Hutchinsons owned a dairy farm located in Wilkes County, North Carolina. This dairy farm contained a substantial amount of milking and feeding equipment. The real property on which the

dairy operation was located was subject to two mortgages. The first mortgage was held by one R.A. Newman and had an outstanding balance of approximately $62,000. The second mortgage was held by appellant Yadkin Valley Bank and Trust Company (Yadkin Valley) and had an outstanding balance of $34,429.08. Three creditors, Northwestern Bank, Chore Boy, Inc., and Dairymen, Inc. (other secured creditors) had liens on the Hutchinsons' milking and feeding equipment, securing a total aggregate debt of approximately $18,000. Initially the debtors did not exempt any real estate or equipment; however, subsequently they amended their exemptions to include real estate, but failed to exempt any farming equipment. Consequently, the milking and feeding equipment became property of the estate pursuant to 11 U.S.C.A. § 541 (1979 and Supp. 1987).

In September of 1981, an offer was made by one Bert Holbrook to purchase the dairy farm, including the milking and feeding equipment, for the sum of $135,000. The evidence indicates that Yadkin Valley had heard about the proposed offer even before it was made and informed the trustee of its consent to such a purchase. Not until December 14, 1981, however did the trustee notify Mr. Holbrook that his bid was accepted *provided* that the first and second mortgagees approved such a purchase. Holbrook then went to the dairy farm where he found that approximately one-half of the dairy equipment had been torn out and removed by one or more of the other secured creditors. Based upon this, Holbrook reduced his offer to purchase the dairy farm and the remaining equipment to $122,000. Before that sale was consummated, Holbrook discovered that more of the dairy equipment, as well as the feeding equipment, had been similarly removed from the dairy farm. At that time Holbrook reduced his offer to purchase the farm to $80,000.

Because the offer to purchase the land for $80,000 would not generate sufficient proceeds to satisfy the debt secured by the first and second mortgages, the property was abandoned by the trustee pursuant to court order. The court foreclosed on the real estate and Yadkin Valley purchased the farm for $78,019.42 at the foreclosure sale. This amount equals the amount of the balance of the first mortgage, plus the assumption of *ad valorem* property taxes. The outstanding balance which was due to Yadkin Valley at that time was $40,672.05. Clearly, had Mr. Holbrook's offer been accepted and had the equipment remained on the dairy farm, the bank would have recovered the full amount due on the mortgage.

Appellants filed suit alleging that the trustee had acted in a negligent manner in violation of 11 U.S.C.A. § 704(1) (Supp. 1987) which in pertinent part requires that the trustee collect and reduce to money the property of the estate for which the trustee serves, and close such estate as expeditiously as is compatible with the best interest of the parties in interest. The trustee filed a cross-claim against the other secured creditors alleging that by removing the equipment without either the consent of the trustee or the approval of the bankruptcy court, the other secured creditors had violated the automatic stay provision of 11 U.S.C.A. § 362 (1979 and Supp.1987). The trustee moved for summary judgment against the appellants. The bankruptcy court granted the motion, holding that the trustee had absolute immunity from suit in this case. On appeal, the district court affirmed the bankruptcy court similarly holding that the trustee is absolutely immune from suit based upon actions and conduct undertaken during the process of the liquidation of an estate.

## II.

■ Although findings of fact are only subject to review under the "clearly erroneous" standard, Bank.R. 8013, conclusions of law made by the bankruptcy court are freely reviewable on appeal by this court. *Caswell v. Lang,* 757 F.2d 608, 609 (4th Cir.1985). We find that trustees in bankruptcy do not hold an absolute immunity to suit.

As this court stated in a case involving a trustee's power to continue the operation of an insolvent business;

The general rule is that "[r]eceivers and trustees appointed to conduct business on behalf of an estate in reorganization are by the weight of authority only liable as receivers and trustees. They are not *individually liable unless they act outside their authority.*" 11 Remington on Bankruptcy § 4507 (1961). (Emphasis added) Unquestionably, the trustee did not act "outside his authority" in continuing the business of the debtor or in accepting the leases of the equipment from the plaintiff as made by the debtor in reorganization. *The order of his appointment expressly provided him with such authority.* In exercising that authority, the trustee was vested with considerable discretion. When acting within the discretionary bounds of this authority, it is settled that the trustee may not be held liable for any mistake of judgment; that his liability personally is "only for acts determined to be willful and deliberate in violation of his duties" and specifically that he is liable solely "*in his official capacity, for acts of negligence.*" *Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir.1977), relying on *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951). (Emphasis added).

*United States v. Sapp*, 641 F.2d 182, 184–185 (4th Cir.1981) (Emphasis added).

 The immunity of the trustee is not absolute. As *Sapp* illustrates, if a trustee is acting under the direct orders of the court, there is immunity. In the absence of an explicit court order, however, a factual issue may arise regarding whether the trustee has acted within her authority. In the case at hand, there exists a serious factual question as to whether the trustee negligently failed to carry out her obligation to reduce the assets of the estate to money as expeditiously as was compatible with the best interests of the parties as required by 11 U.S.C.A. § 704(1). Clearly, had the trustee acted more promptly, the sale of the dairy farm would have provided sufficient funds to pay the debtors' mortgages. While the allegedly unauthorized removal of the milking and feeding equipment by the other secured creditors may mitigate against the ultimate finding of liability against the trustee, there are certainly genuine issues of material fact which are in dispute. Therefore, summary judgment was improper under Fed.R.Civ.P. 56(c). This case is therefore remanded to the bankruptcy court for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.