**In re John Everett HUTCHINSON and Ruth Laura Davis Hutchinson, Debtors.**

**YADKIN VALLEY BANK & TRUST COMPANY, John Everett Hutchinson, and Ruth Laura Davis Hutchinson, Plaintiffs,**

**v.**

**NORTHWESTERN BANK, Chore Boy, Inc., Dairymen, Inc., and Linda McGee, trustee, Defendants.**

**Bankruptcy No. B–81–01653 C–7. Adv. No. A–83–0082.**

United States Bankruptcy Court, M.D. North Carolina.

July 12, 1991.

---

R. Bradford Leggett, Winston–Salem, N.C., for defendant trustee.

Daniel J. Park, Elkin, N.C., for plaintiffs.

## MEMORANDUM OPINION

JERRY G. TART, Bankruptcy Judge.

This matter came on for trial on September 17, 1990, upon the complaint of the plaintiffs, Yadkin Valley Bank & Trust Company, John Everett Hutchinson and Ruth Laura Davis Hutchinson, seeking to recover damages from the defendant trustee, Linda McGee, for negligence in the performance of her duties as trustee. Daniel J. Park appeared as counsel for the plaintiffs; R. Bradford Leggett appeared as counsel for the defendant trustee. The court has carefully considered the evidence presented, the arguments of counsel, the pleadings, briefs and official court file and, for the reasons set out below, finds that the plaintiffs are not entitled to recover damages from the defendant trustee in this matter.

### I. Summary of the Facts

On July 15, 1981, John Everett Hutchinson and Ruth Laura Hutchinson ("the Hutchinsons") filed a joint petition under Chapter 7 of the United States Bankruptcy Code. Linda McGee was subsequently appointed by the court as the trustee in the Hutchinsons' bankruptcy case.

At the time that the petition was filed, the Hutchinsons owned a fully equipped 91–acre dairy farm located in Wilkes County, North Carolina. The real property, valued by the Hutchinsons on their schedules at $150,000.00, was encumbered by two mortgages: a first mortgage to R.A. Newman with an approximate balance of $62,000.00 and a second mortgage to Yadkin Valley Bank & Trust Company ("Yadkin Valley Bank") with an approximate balance of $34,430.00. The improvements to the real property, including the farmhouse, barn, shed, silos and dairy equipment, were not separately valued on the schedules, although the Hutchinsons did indicate that there was a $16,600.00 lien on the dairy equipment in favor of Northwestern Bank. In addition to the dairy farm, the Hutchinsons scheduled various items of personal property, including farm equipment, tools, vehicles and a mobile home, and the liens thereon. There were no dairy cattle on the farm at the time that the petition was filed.

The Hutchinsons' original claims for exemptions, which were filed with the petition and schedules, did not include any real property exemption in the dairy farm. Several months later the Hutchinsons requested, and received, authority from the court to amend their property exemptions. There were no objections to the amended exemptions, in which the Hutchinsons each

claimed a $7,500.00 exemption in the real property.

In early September, 1981, the trustee received from a neighboring dairy farmer, Bert Holbrook, a written offer to purchase the Hutchinsons' dairy farm for $135,-000.00. The offer specifically included the dairy equipment as well as the real property. Thereafter, the trustee investigated Holbrook's offer by conducting interviews, checking credit references and examining the real property records. The trustee also determined (after investigation) that the secured creditors would consent to transfer their liens to proceeds and that the Hutchinsons would waive their homestead exemptions in order to facilitate the private sale of the farm. By letter dated December 14, 1981, the trustee informed Holbrook that his offer would be presented to the court for approval.

The trustee was in the process of preparing the documentation required by the court for private sales of real property when she was informed by Bert Holbrook in early January, 1982, that some of the dairy equipment had been removed from the farm and that, as a result, he was reducing his offer to $122,000.00. After further investigation, the trustee found Holbrook's new offer to be acceptable and proceeded to complete the necessary documentation, which included: (1) an application to sell the property with a supporting appraisal; (2) consent orders transferring the liens of the secured creditors to proceeds; and (3) voluntary waivers of homestead exemptions for the Hutchinsons. The trustee mailed the consent orders and the voluntary waivers to the secured creditors and the debtors. Within the next few weeks the trustee received the signed consent orders from the secured creditors; however, the trustee never received the voluntary waivers from the debtors.

By April 1, 1982, all of the documentation necessary to complete the sale of the Hutchinsons' farm had been filed with the court. The Application to Sell was set for hearing and, on April 14, 1982, the court approved the sale of the dairy farm to Bert Holbrook for $122,000.00. Almost immediately thereafter the trustee learned that the remaining dairy equipment had been removed from the farm in late March, 1982. As a result of the second removal of equipment, Holbrook refused to complete the sale at $122,000.00, reducing his offer for the Hutchinsons' farm to $80,000.00. The trustee could not accept the $80,000.00 offer and the property was ultimately released from the estate for foreclosure by the holder of the first mortgage. Yadkin Valley Bank, the holder of the second mortgage, purchased the property at the foreclosure sale. Although the bank was able to later sell the property for more than it paid for the property at the foreclosure sale, there remained a balance on the Hutchinsons' account.

Unhappy about the unpaid balance, Yadkin Valley Bank, joined by the Hutchinsons, instituted legal action first against the creditors who removed the dairy equipment from the Hutchinsons' farm, and later against the trustee. After several years of litigation and appeals on procedural issues, the matter came before the bankruptcy court on the trustee's motion for summary judgment. The bankruptcy court granted summary judgment in favor of the trustee and the district court affirmed, stating that a trustee is protected by absolute immunity. The summary judgment was appealed to the Fourth Circuit Court of Appeals which found that a trustee has immunity only when acting under direct orders of the court and that, absent such an order, a factual issue may exist regarding whether a trustee has acted within his authority. Finding genuine issues of material fact, the court remanded the matter to the bankruptcy court for further hearing. 819 F.2d 74. After several more years of litigation and appeals on procedural issues, the matter is finally before this court for decision on the merits.

## II. Discussion

In this adversary proceeding, the plaintiffs assert that, with respect to the sale of the Hutchinsons' dairy farm, the trustee breached the duty imposed upon her by § 704(1) of the Bankruptcy Code. The plaintiffs contend that § 704(1) required

the trustee to "reduce the assets of the estate to money as expeditiously as was compatible with the best interests of the parties" and that the trustee was negligent in the performance of that duty. The plaintiffs identify numerous acts by the trustee that they argue constitute negligence by the trustee, all of which concern the trustee's efforts to preserve and sell the dairy farm. It appears to the court that the plaintiffs interpret § 704(1) as imposing upon the trustee a duty to sell the Hutchinsons' dairy farm "expeditiously" (i.e. "quickly") and in a manner that is "in the best interests of the parties" (i.e. the plaintiffs). The court does not agree with the plaintiffs' interpretation of 11 U.S.C. § 704(1).

### A. Scope of a Trustee's Duties Under 11 U.S.C. § 704(1)

██ Inquiries into the meaning of a statute should begin with the statute itself. *See, e.g., United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In the present matter, the relevant section of the Bankruptcy Code states that a trustee shall:

(1) collect and reduce to money all property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

11 U.S.C. § 704(1). This court reads § 704(1) as identifying two separate, although closely related, duties: (1) the duty to "collect and reduce to money the property of the estate" and (2) the duty to "close such estate." This court also reads § 704(1) as requiring a trustee to act "as expeditiously as is compatible with the best interests of parties in interest" only with respect to closing the bankruptcy estate. The court's interpretation of § 704(1) is based upon the plain language of the statute and upon general principles and practices of bankruptcy law.

██ The "plain meaning" of a statute is determined by an examination of, among other things, the grammatical structure of the statute. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. at 239, 109

S.Ct. at 1029. An examination of the grammatical structure of § 704(1) of the Bankruptcy Code reveals that its drafters inserted a comma before the phrase "and close such estate as expeditiously as is compatible with the best interest of the parties in interest." This particular comma, which serves no mandatory grammatical purpose, apparently was inserted by the drafters to emphasize the separation of the duty to "close the estate" from the duty to "collect and reduce to money the property of the estate." The comma also has the effect of isolating the adverb phrase "as expeditiously as is compatible with the best interests of the parties in interest" so that it appears to modify only the verb "close".

The above interpretation of § 704(1) is consistent with the principles and practices of bankruptcy law. In practice, the act of collecting and liquidating estate property is only one of the many steps taken by a trustee in accomplishing his "main" purpose and objective: closing the estate "expeditiously." *See In re Riverside–Linden Investment Co.*, 85 B.R. 107, 111 (Bankr. S.D.Cal.1988) (citing 4 *Collier on Bankruptcy* para. 704.01[3] (15th ed. 1987)). In the real world of day-to-day practice, closing the estate and liquidating estate property are two separate, although related, tasks that the trustee must perform. Interpreting 11 U.S.C. § 704(1) as including two separate duties simply reflects actual bankruptcy practice.

██ In principle, a trustee should liquidate estate assets only if the estate will benefit from the liquidation. In so doing, the trustee should select the method of liquidation that is most beneficial to the estate. Some methods of liquidating estate property, such as selling property through normal commercial channels, may be in the best interest of the estate and, at the same time, may not be in the best interest of secured creditors or debtors due to the delay and uncertainty of success. Obviously, the court should not interpret 11 U.S.C. § 704(1) so as to require a trustee to liquidate estate property "as expeditiously as is in the best interest of the parties in interest" because such an interpretation could

832

require the trustee to act against the best interests of the estate.

Therefore, the court finds that, as a matter of statutory interpretation, 11 U.S.C. § 704(1) identifies two separate duties of bankruptcy trustees: (1) a duty to "collect and reduce to money the property of the estate" and (2) a duty to "close such estate." This court also finds that 11 U.S.C. § 704(1) requires a trustee to act "as expeditiously as is compatible with the best interests of parties in interest" only with respect to closing the bankruptcy estate. The court notes that all of the plaintiffs' allegations in the present matter relate to the trustee's efforts to sell the dairy farm rather than her actions in closing the estate. The court finds, therefore, that this matter concerns only the trustee's duty to "collect and reduce to money the property of the estate" and will limit its discussion accordingly.

### B. Standard of Care Required of Bankruptcy Trustees

The standard of care imposed upon bankruptcy trustees acting in their official capacities has been defined by the courts as one of "due diligence". *Ford Motor Credit Company v. Weaver,* 680 F.2d 451, 461 (6th Cir.1982). However, the measure of care, diligence and skill required of a bankruptcy trustee differs from that required of ordinary trustees and other fiduciaries. *Sherr v. Winkler,* 552 F.2d 1367 (10th Cir.1977). Because of the complexity of bankruptcy proceedings, bankruptcy trustees are vested with considerable discretion. *See, Yadkin Valley Bank & Trust Co. v. McGee,* 819 F.2d 74 (4th Cir.1987). Accordingly, the measure of care, skill and diligence applicable to bankruptcy trustees is that of "an ordinarily prudent person serving in such capacity, taking into consideration the discretion allowed." *Sherr v. Winkler,* 552 F.2d at 1375. This emphasis on the trustee's discretion has prompted at least one court to describe the standard of care applicable to bankruptcy trustees as "the reasonable trustee" standard. *See, In re Haugen Construction Service, Inc.,* 104 B.R. 233 (Bankr.D.N.D.1989).

In the present matter, the question before the Court is whether the Defendant trustee acted as "an ordinarily prudent person" in fulfilling her duty to "collect and reduce to money all property of the [Hutchinsons'] estate," taking into consideration the "considerable" discretion enjoyed by bankruptcy trustees. This Court is of the opinion that she did.

### 1. The Duty to Liquidate: To Whom Is It Owed?

A trustee's duty to liquidate estate property is triggered only if the trustee determines that liquidation is in the best interest of the estate. A bankruptcy trustee has no duty to liquidate estate property solely for the benefit of a secured creditor or for the benefit of a debtor. A trustee's only duty to a secured creditor is to exercise reasonable care in acting as a custodian of estate property that serves as collateral for the holder of a secured claim. *In re Thu Viet Dinh,* 80 B.R. 819 (S.D.Miss.1987). As a custodian, a trustee must exercise reasonable diligence to protect and preserve any property in which a secured creditor has an interest. *Id.* A trustee also acts as a custodian of estate property in which a debtor claims an interest and, as such, has a duty to exercise reasonable diligence to preserve and protect such property. *In re Reich,* 54 B.R. 995 (Bankr. E.D.Mich.1985). Notwithstanding the foregoing standards of trustee liability, a secured creditor also has a responsibility to exercise reasonable diligence to protect the property of the estate that serves as its collateral. *See, e.g., In re Thu Viet Dinh,* 80 B.R. at 823.

In the present matter, the trustee's ability to protect and preserve the assets of the Hutchinsons' estate was hampered by the lack of estate funds and the distances involved. The dairy farm was more than fifty miles from the trustee's office, too far for the trustee to make frequent personal inspections. Due to a previous fire loss, there was no casualty insurance on the farm at the time that the case was filed. The secured creditors were informed by the

trustee that there was no insurance and that she had no funds with which to purchase any insurance even if it was available.

Because of the lack of insurance, the trustee took immediate steps to secure or abandon the movable farm equipment. After the Hutchinsons vacated the premises, the trustee visited the farm and made certain that the buildings and gates were locked. The trustee was informed by one local creditor that he would take steps to "winterize" the farm. In addition, the trustee knew from her contacts with the local creditors that they were driving by the farm and generally watching over it. Given the circumstances, there was little more that the trustee could do to secure the property of the estate. Accordingly, the court finds that, considering the distances involved, the lack of funds in the estate and the active participation of the creditors in protecting the farm, the trustee exercised reasonable care in protecting and preserving the assets of the estate in which the secured creditors and the debtor had an interest.

### 2. The Decision to Liquidate: Was It Reasonable?

In order to determine whether or not the liquidation of estate property is in the best interest of the estate, a trustee must first identify and locate the estate's property. Estate property consists of all legal or equitable interests of the debtor, wherever located, as of the commencement of the bankruptcy case. 11 U.S.C. § 541(a). In most cases, the trustee is able to identify and locate estate property by examining the statements and schedules filed with the debtor's petition, questioning the debtor at the creditors' meeting and reviewing the debtor's books and records. However, if the debtor is not cooperative, asserts a Fifth Amendment privilege, has poorly maintained books and records, or has left the district, identifying estate property is considerably more difficult for the trustee. In such cases, the trustee may choose to employ a special investigator to assist in locating assets of the estate pro-

vided, of course, that the trustee can pay the investigator.

Once the property of the estate has been identified and located, the trustee has the task of "collecting" that property. "Collecting" property of the estate encompasses a wide range of acts by the bankruptcy trustee, from taking physical possession to taking legal action. Where applicable, the trustee may seek to recover property of the estate from custodians or third parties. *See, e.g.,* 11 U.S.C. §§ 542, 543 (governing turnover of property held by custodians and third parties); 11 U.S.C. §§ 544, 547, 548 (governing the recovery of preferential transfers and fraudulent conveyances).

Estate property is often encumbered by liens or subject to exemptions claimed by the debtor. The trustee must investigate alleged liens and determine both the validity of the lien and the extent of the indebtedness secured by the lien. If the property could be exempted by the debtor, the trustee must determine whether the debtor has claimed an exemption in the property and, if so, whether the exemption claimed by the debtor is allowable.

In order to determine whether or not there is any equity in property, the trustee must first determine the value of the property. If there are funds in the estate, the trustee may have the property appraised. If there are no funds in the estate to pay for an appraisal, the trustee may determine the value of the property through informal means, including: (1) discussions with parties generally familiar with similar properties, such as realtors, brokers, auctioneers or merchants; (2) examination of documents showing cost or tax values; (3) reference to generally accepted and reputable price lists; and (4) personal inspection.

Once the value of the property has been determined, that value must be reduced by the value of any perfected security interests in the property. If there is any value in the property over and above the total indebtedness secured by the property, then that equity must be reduced by any valid exemption that the debtor has claimed in the property. If, after considering the secured indebtedness and the debtor's exemp-

tions, there is still some apparent value in the property, the trustee must evaluate the potential benefits of liquidating the property and determine whether there is sufficient equity in the property such that the benefits of selling the property outweigh the burdens associated with the sale.

The potential benefits of liquidating estate property depend on the amount of equity in the property and the estimated costs of liquidating the property. The costs of liquidating estate property vary from case to case. Common liquidation expenses include, for example, realtor's commissions, auctioneer's fees, and advertising expenses. Sometimes the value of estate property can be increased dramatically by investing a proportionately small amount of money in completing or improving the property. In the appropriate case the trustee may also need to evaluate these "uncommon" liquidation expenses, such as the costs of completing the manufacture of inventory or the cost of an environmental cleanup in order to evaluate the potential benefits of liquidating the property.

In the present matter, the first issue for the court's consideration is whether the trustee acted reasonably and prudently in determining which estate assets, if any, should be liquidated. Having observed the demeanor of the trustee when she testified before the court, and having reviewed the documents filed by the trustee during her administration of the Hutchinsons' case, the court is of the opinion that the trustee took the appropriate action in identifying, locating, collecting, evaluating and, ultimately, liquidating, the assets of the estate.

The trustee identified and located the property of the estate by examining the Hutchinsons' statements and schedules and questioning them at the creditors' meeting on August 20, 1981. On that same day, the trustee visited the dairy farm and inventoried and inspected the assets scheduled by the debtors. At that time the trustee observed that the equipment, including the dairy equipment, appeared in good condition and looked nearly new.

Early in the case the trustee determined that there were no assets to "collect" other than the assets located at the Hutchinsons' farm. The only potential fraudulent conveyance or preferential transfer noted by the trustee was the prepetition transfer of the dairy cattle from the Hutchinsons to their son, which was disclosed on their schedules and statements. The trustee investigated the circumstances that led to the transfer and decided not to pursue the matter further. The court notes that a bankruptcy trustee is under no duty to pursue every transfer that might be avoidable under the Bankruptcy Code. *See, e.g., In re Haugen Construction Service, Inc.*, 104 B.R. 233 (Bankr.D.N.D.1989). Given the discretionary nature of the Bankruptcy Code's avoidance provisions, there appears to have been nothing improper about the trustee's decision to not pursue the matter of the dairy cattle further.

The trustee also determined early in the case that the farm equipment had little or no value for the estate and, accordingly, applied to the court for authority to abandon the equipment to the secured creditors. The trustee's request was prompted by: the minimal equity, if any, in the equipment; the difficulty in securing the equipment; and the lack of funds for insurance. The court approved the trustee's applications and allowed the trustee to abandon the farm equipment.

Once the trustee had located the estate property and taken steps to secure or abandon the movable items of property, she turned her attention to the real property. The trustee had been contacted by potential buyers for the dairy farm as early in the case as August 20, 1981, the date of the first meeting of creditors. However, only one of the potential purchasers, Bert Holbrook, ever submitted a written offer to purchase the Hutchinsons' farm. By letter dated September 2, 1981, Holbrook offered to purchase the farm, including the dairy barn and equipment, for $135,000.00. The trustee did not immediately accept Holbrook's offer, but proceeded to investigate the adequacy of the amount offered and the ability of the offeror to consummate the purchase.

The trustee began her investigation of Holbrook's offer by conducting interviews with the Hutchinsons, the Hutchinsons' attorney and various representatives of the secured creditors. The trustee noted that, according to the Hutchinsons' schedules, the fair market value of the dairy farm, with improvements, was $150,000.00, and that the total amount of debt secured by the farm or improvements was approximately $113,000.00. The trustee also noted that the Hutchinsons had not claimed any exemption in the real property in their schedules. Consequently, the trustee estimated that there was as much as $36,-000.00 equity in the farm for the estate.

From her interviews with the Hutchinsons and their attorney, the trustee learned that the Hutchinsons had valued the farm at $150,000.00 based upon an appraisal that had been made only a few months before they filed bankruptcy. The trustee also learned that the Hutchinsons had purchased the farm in July, 1978, from R.A. Newman, the holder of the first mortgage, for $135,000.00. The Hutchinsons informed the trustee that the farm was originally a chicken farm, and that they had built the dairy barn and purchased the dairy equipment shortly after they acquired the farm. Given that information, the Hutchinsons' valuation of the dairy farm at $150,000.00 appeared realistic.

In her interviews with the secured creditors and their various representatives, the trustee verified the balances on the secured notes and solicited the creditors' consent to transfer their liens to proceeds in the event that she decided to present Holbrook's offer to the court. At the time that this case was filed, a trustee could sell property free and clear of liens either by (1) commencing an adversary proceeding to transfer the liens to proceeds, or (2) getting the consent of all parties in interest. *See* former Bankruptcy Rule 701. Obtaining the consent of all parties in interest was generally less time consuming and less expensive than filing an adversary proceeding. Since Holbrooks' offer was for an amount sufficient to pay all of the secured debt in full, the creditors indicated to the trustee that they would consent to having their liens transferred to proceeds in order to facilitate the private sale of the dairy farm.

During the course of the trustee's investigation, the court authorized the Hutchinsons to amend their exemptions to include an exemption in the real property. The amendment had the effect of reducing the potential equity in the farm from approximately $36,000.00 to approximately $21,-000.00, but did not adversely affect the trustee's ability to sell the property.

In addition to the above interviews, the trustee also checked the public record for additional liens against the farm, examined the various security documents, conducted a credit investigation of Holbrook and revisited the farm. Having no funds in the estate with which to pay an appraiser, the trustee contacted the secured creditors in late November, 1981, seeking to locate a recent appraisal of the Hutchinson farm to include with her application to the court. The trustee was informed shortly thereafter by counsel for R.A. Newman that Yadkin Valley Bank had a recent appraisal on the farm showing a value of approximately $112,000.00. Satisfied that the sale to Holbrook would, in all likelihood, meet with court approval, the trustee advised Holbrook by letter dated December 14, 1981, that she was prepared to present his offer to the court for approval.

Each of the above-described actions of the trustee was necessary for her to make an informed decision as to the adequacy of Holbrooks' offer. The court is of the opinion that the trustee acted appropriately in investigating Holbrooks' offer and, in fact, would have been derelict in her duty to the court and to the estate had she not investigated the offer as she did. The trustee's duty to act in the best interest of the estate required her to make an effort to determine whether she should attempt to obtain a better offer for the farm. Based upon the court's own experience in such matters, the court is also of the opinion that, considering the distances involved, the nature of the asset and the estate's lack of funds, the amount of time taken by the trustee to complete her investigation was not particularly unusual.

### 3. The Collapse of the Sale: Was It Foreseeable?

■ Once a trustee has determined that liquidation of estate property is in the best interest of the estate, the trustee can begin the actual liquidation process. The liquidation process may take weeks, months or years, depending on the nature of the assets to be liquidated and the method of liquidation selected by the trustee. Most estate assets are liquidated by either private sale or public auction. Although the Bankruptcy Code expresses no preference between private and public sales, trustees generally prefer to use public sales whenever possible because public sales enable a trustee to liquidate estate assets quickly and with a high degree of visibility. However, if the estate property is unusual in nature or has a substantial fair market value, a trustee may determine that a private sale is in the best interest of the estate. For example, private sales of real property almost always bring a better price than public auctions and, accordingly, trustees often attempt to sell real property by private sale rather than by public auction.

In this case the trustee chose, quite properly, to attempt a private sale of the Hutchinsons' dairy farm. The trustee received several inquiries and one offer to purchase the property almost immediately after the case was filed. In addition, the creditors appeared to favor a private sale of the property by the trustee, agreeing early in the case to transfer their liens to proceeds in order to facilitate such a sale. Given the apparent interest in the property, the support of the creditors and the amount of the initial offer, the trustee acted reasonably in choosing to proceed with a private sale of the farm.

All sales of estate property, whether public auctions or private sales, are governed by § 363 of the Bankruptcy Code. The trustee may sell estate property "after notice and hearing" and may, under certain circumstances, sell estate property free and clear of all liens and other interests. *See* 11 U.S.C. §§ 363(b), (f), (g), and (h). As previously stated, at the time that this case was filed, a trustee could sell property free and clear of liens either by (1) commencing an adversary proceeding to transfer the liens to proceeds, or (2) getting the consent of all parties in interest. *See* former Bankruptcy Rule 701. In the present matter, the trustee obtained the oral consent of the parties in interest to transfer their liens and interests to proceeds in order to facilitate the private sale of the farm before she commenced her investigation of the Holbrook offer. Upon the completion of her investigation, the trustee proceeded to assemble the documents that had to be included with the Application to Sell Property: the consent orders transferring the liens of the secured creditors, the debtors' waivers of exemptions and the appraisals.

The trustee was in the process of preparing the private sale documents when she was informed by Holbrook that some of the dairy equipment had been removed from the farm and that, as a result, he was reducing his offer to $122,000.00. After further investigation, the trustee decided to proceed with the application for private sale at $122,000.00. The trustee mailed consent orders to the secured creditors which were signed and returned to the trustee. The trustee also mailed waivers of exemptions to the debtors, but the waivers were never signed and returned to the trustee. The trustee assembled the application, complete with appraisals that had been obtained from the secured creditors and consent orders transferring liens to proceeds, and filed it with the court. The court calendared the application for hearing and, on April 14, 1982, approved the sale of the dairy farm to Bert Holbrook for $122,000.00. Almost immediately thereafter the trustee learned that the remaining dairy equipment had also been removed from the farm. As a result of the second removal of equipment, Holbrook refused to complete the sale at $122,000.00, reducing his offer for the Hutchinsons' farm to $80,000.00. The trustee could not accept the $80,000.00 offer and made no further efforts to sell the farm. The property was released from the estate for foreclosure by the holder of the first mortgage. Instead of having their claims paid in full as a

result of a private sale of the property, Yadkin Valley Bank ended up with an unpaid balance on its books and the Hutchinsons ended up with nothing at all.

The plaintiffs argue that, but for delays by the trustee with respect to the sale of the dairy farm, they would have been paid in full. In other words, the plaintiffs contend that the sale was lost and they were damaged because the trustee didn't act quickly enough. The court is of the opinion that the sale was lost not because of any action or inaction of the trustee, but because of the completely unforeseeable acts of third parties in removing the permanently attached dairy equipment from the farm. The court records and the testimony of the trustee reflect that most, if not all, of the dairy equipment was removed by the lienholders without the permission of the trustee. The court records also reflect that at least one of the creditors knew about the pending sale of the dairy farm and knew, or had reason to know, that the sale would generate sufficient funds to pay all lienholders. No one, including a bankruptcy trustee, could have foreseen that a secured creditor would act so irrationally as to violate the automatic stay by going on the premises and removing collateral while there was a sale pending which when approved would pay that creditor in full.

The court recognizes that it did take the trustee some time to put together this private sale: from the date that the trustee received Holbrook's written offer to purchase the farm and ending with the date that the court approved the sale to Holbrook took approximately six and one-half months. However, it appears to the court that every action taken by the trustee was necessary and reasonable. It also appears to the court that the trustee worked steadily toward closing this sale and that the "delays" were attributable to a combination of factors, including the distances involved, the lack of funds in the case and the normal delays attributable to doing business by mail and the interference with the property by third parties.

Therefore, the court finds that the trustee acted reasonably under the circumstances of this case with respect to the private sale of the Hutchinsons' dairy farm to Bert Holbrook. The court also finds that it was the unforeseeable acts of third parties, and not any action or inaction by the trustee that caused the sale to Holbrook to fall apart.

### CONCLUSION

The court finds no negligence by the trustee Linda McGee with respect to the liquidation of the assets of the Hutchinsons' bankruptcy estate, including the private sale of the dairy farm. The actions taken by the trustee were within the scope of her duty to "collect and reduce to money the property of the estate" and were, under the circumstances, reasonable. Accordingly, the court finds that the plaintiffs, Yadkin Valley Bank & Trust, John Everett Hutchinson and Ruth Laura Davis Hutchinson, are not entitled to any recovery from the trustee in this matter.