In re John Everett HUTCHINSON and Ruth Laura Davis Hutchinson, a/k/a Johnny's Roofing, Debtors.

YADKIN VALLEY BANK & TRUST CO.; John Everett Hutchinson; Ruth Laura Davis Hutchinson, Plaintiffs–Appellants,

v.

Linda McGEE, Trustee, Defendant–Appellee,

and

Northwestern Bank; Chore–Boy, Inc.; Dairymen, Inc., Defendants.

No. 92–1988.

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1993.

Decided Sept. 16, 1993.

Daniel Joseph Park, Daniel J. Park, P.A., Elkin, NC, argued, for plaintiffs-appellants.

R. Bradford Leggett, Allman, Spry, Humphreys, Leggett & Howington, P.A., Winston–Salem, NC, argued, for defendant-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HAMILTON and WILLIAMS, Circuit Judges.

## OPINION

WILLIAMS, Circuit Judge:

This appeal concerns allegations of negligence made against a bankruptcy trustee in her official capacity. The debtors, John Everett Hutchinson and Ruth Laura Hutchinson, contend that the trustee, Linda McGee, failed to sell their dairy farm as expeditiously as possible. They argue that McGee should have quickly accepted and obtained court approval of an offer she had received that would have covered all encumbrances on the property. While acceptance of this offer was pending, third parties entered the property and removed the Hutchinsons' milking and feeding equipment in violation of the automatic bankruptcy stay. As a result of the removal of the equipment, the prospective buyer lowered his offer to an unacceptable price that the trustee refused to accept. Because the price at which the property was sold at foreclosure did not cover a second deed of trust held by Yadkin Valley Bank and Trust Company, the Bank joined the Hutchinsons in bringing this suit in 1983 based on McGee's allegedly dilatory behavior. Appellants also alleged that McGee had failed to preserve the property and had failed to take steps to obtain the return of the removed equipment.

Initially, the bankruptcy court found that McGee was absolutely immune from suit. We rejected that view and remanded. *Yadkin Valley Bank & Trust Co. v. McGee*, 819 F.2d 74 (4th Cir.1987) (*Yadkin I* ). On remand, the bankruptcy court concluded after a bench trial that McGee had not violated her statutory duties and hence was not liable. *Yadkin Valley Bank & Trust Co. v. Northwestern Bank (In re Hutchinson)*, 132 B.R. 827 (Bankr.M.D.N.C.1991) (*Yadkin II* ). The district court affirmed.

In this appeal, the Hutchinsons and the Bank contend that the bankruptcy court's findings were clearly erroneous. They also contend that they were entitled to a jury trial and that the bankruptcy court erred in trying the negligence claims brought against McGee separately from the cross-claims that McGee brought against the parties who removed the milking and feeding equipment. We find no reversible error with regard to these contentions.

Appellants also contend that the bankruptcy court did not address their claim that McGee failed to preserve the property of the bankruptcy estate. We agree and remand for further fact-finding on this issue.

## I. Background

On July 15, 1981, when the Hutchinsons filed their petition for bankruptcy, they owned a fully equipped ninety-one acre dairy farm that they valued at $150,000. In their petition, the Hutchinsons listed three encumbrances upon their property: Mr. and Mrs. R.A. Newman held a note secured by a deed of trust for $62,054; Yadkin Valley Bank held a note secured by a second deed of trust for $34,000; and Northwestern Bank held a lien for $16,596.00 on the dairy and feeding equipment that the Hutchinsons had purchased and installed on the property. Together, these liens totalled $112,650.

In a letter dated September 2, 1981, Bert Holbrook offered to purchase the farm for $135,000. The offer specifically included the dairy and feeding equipment as well as the real property. *Yadkin II*, 132 B.R. at 830. Following this offer, the Hutchinsons moved the bankruptcy court to allow them to amend their claim for property exemptions because Holbrook's offer was higher than the price they had expected to receive. Having received no objections to the proposed amendment, the bankruptcy court allowed the Hutchinsons to claim $15,000 in exemptions as allowed under 11 U.S.C. § 522(d)(1) (Supp. II 1978) (allowing each debtor to claim a $7,500 exemption in property). The liens and exemptions together totalled $128,030.

McGee informed Holbrook in a December 14, 1981, letter that his offer would be presented to the bankruptcy court for approval. When he received the letter, Holbrook inspected the property and discovered that the dairy equipment secured by Northwestern Bank's lien had been removed in violation of the automatic bankruptcy stay. As a result, in early January 1982 he reduced his offer to $122,000. McGee approved the sale at the lower price and on April 1, 1982, submitted the necessary documentation to the bankruptcy court for approval. On April 14, 1982, the court approved the sale.

Shortly thereafter, McGee learned that additional equipment (mostly feeding equipment) had been removed from the property on March 26. As a result, Holbrook lowered his price to $80,000, which McGee refused to accept. The Hutchinsons' farm was released for foreclosure and the Newmans, the holders of the first deed of trust, sold the property to Yadkin Valley Bank at a foreclosure sale. The Bank was ultimately able to sell the property at a higher price than it had paid at the foreclosure sale, but it was unable to recover the full amount due under the Hutchinsons' note and second deed of trust. *Yadkin II*, 132 B.R. at 830. The Bank and the Hutchinsons sought to recover their losses from McGee.

## II. The Scope of Trustee Liability

We begin with a review of the nature and scope of a bankruptcy trustee's liability. Although the Bankruptcy Code imposes specific duties on bankruptcy trustees, *see, e.g.,* 11 U.S.C. § 704 (Supp. II 1978) (amended 1984 & 1986), the Code does not explicitly make trustees liable for breach of those duties. The source of trustee liability lies in the Supreme Court's decision in *Mosser v. Darrow*, 341 U.S. 267, 272, 71 S.Ct. 680, 682, 95 L.Ed. 927 (1951), and its progeny.

*Mosser* concerned a bankruptcy trustee's breach of his fiduciary duty of loyalty. The trustee in *Mosser* hired two employees to help administer the bankruptcy estate and expressly agreed that the employees could "continue to trade in securities of the debtors' subsidiaries." 341 U.S. at 269, 71 S.Ct. at 680. The Supreme Court concluded that the arrangement with the employees amounted to a "willful and deliberate setting up of an interest in employees adverse to that of the trust." *Id.* at 272, 71 S.Ct. at 682. Because "[e]quity tolerates in bankruptcy trustees no interest adverse to the trust," *id.* at 271, 71 S.Ct. at 682, the Court held that the district court had not erred in surcharging the trustee (i.e., holding the trustee personally liable) for the profits of his two employees, *see id.* at 269–70, 71 S.Ct. at 680–82.

*Mosser* did not directly address to what extent, if any, bankruptcy trustees are liable for negligent breaches of their duties as trustee. The circuits have divided on this question. The Sixth and Tenth Circuits have held that a trustee is "(a) not liable, in any manner, for mistake in judgment where discretion is allowed, (b) liable *personally* only

for acts determined to be willful and deliberate in violation of his duties and (c) liable, in his official capacity, for acts of negligence." *Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir.1977); *accord Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 461 (6th Cir.1982); *see also In re Chicago Pac. Corp.*, 773 F.2d 909, 915 (7th Cir.1985) (limiting bankruptcy trustee's personal liability to willful and deliberate violations of fiduciary duties). In contrast, the Second and Ninth Circuits have held that "[a]lthough a trustee is not liable in any manner for mistakes in judgment where discretion is allowed, he is subject to personal liability for not only intentional but also negligent violations of duties imposed upon him by law." *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir.1983) (citations omitted); *accord In re Gorski*, 766 F.2d 723, 727 (2d Cir.1985); *see also Red Carpet Corp. v. Miller*, 708 F.2d 1576, 1578 (11th Cir.1983) (per curiam) (noting that bankruptcy trustee is personally liable for negligence).

In *Yadkin I*, 819 F.2d at 76, and *United States ex rel. Julien P. Benjamin Equipment Co. v. Sapp*, 641 F.2d 182, 184–85 (4th Cir.1981) (per curiam), this court adopted a modified version of the Sixth and Tenth Circuits' approach. *See also Turshen v. Chapman*, 823 F.2d 836, 839 (4th Cir.1987) (applying *Yadkin I* ). In addition to the tripartite liability scheme adopted in *Sherr*, *Yadkin I* recognized that trustees are completely immune from suit where the trustee acts pursuant to the explicit instructions of the bankruptcy court. 819 F.2d at 76. In this regard, *Yadkin I* merely expanded on a limitation on liability previously identified by the Supreme Court in *Mosser*. The Court in *Mosser* had recognized that trustees could "seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment" and thereby avoid any resulting liability. 341 U.S. at 274, 71 S.Ct. at 683.

McGee did not act under an explicit court order approving her actions, and in *Yadkin I*, we noted a serious factual question whether she had negligently breached her duties as trustee. There was no question regarding McGee's personal liability because Appellants

had not claimed that she deliberately violated her fiduciary duties. However, because McGee could be held liable in her official capacity for negligence, we remanded the case for further proceedings.

## III. *Breach of Duty*

### A. *Standard of Care*

The negligence at issue in this case concerns McGee's alleged violation of her duty under 11 U.S.C. § 704(1) to "collect and reduce to money the property of the estate for which such trustee serves, and close up such estate as expeditiously as is compatible with the best interests of parties in interest." In evaluating whether McGee had breached her duty under § 704(1), the bankruptcy court defined the applicable standard of care as being that of "an ordinarily prudent person in fulfilling her duty to collect and reduce to money all property of the Hutchinsons' estate, taking into consideration the considerable discretion enjoyed by bankruptcy trustees." *Yadkin II*, 132 B.R. at 832 (internal quotation marks and brackets omitted). Because we disagree with the bankruptcy court's interpretation of § 704(1), we also disagree with its statement of the standard of care.

McGee argues, and the bankruptcy court held, that § 704(1) creates two separate duties: first, to "collect and reduce to money the property of the estate," and, second, to "close up such estate as expeditiously as is compatible with the best interests of parties in interest." It reasoned that because a comma follows the word "serves," the term beginning "expeditiously" only modifies the second duty, and does not apply to the first duty.

The difficulty with McGee's argument is that it reduces the requirement of expeditious conduct to a relatively minor duty only applicable to the final stages of liquidation. In fact, the duty to close the estate expeditiously is the trustee's "main duty," 4 *Collier on Bankruptcy, supra*, ¶ 704.01(3), at 704–5, and "overriding responsibility," *Estes & Hoyt v. Crake (In re Riverside–Linden Inv. Co.)*, 925 F.2d 320, 324 (9th Cir.1991). In order to close an estate expeditiously, a bankruptcy

trustee must expeditiously perform each task necessary to close the estate, including the liquidation of the estate. The duty to close the estate expeditiously will often conflict with other duties, *In re Melenyzer*, 140 B.R. 143, 155 (Bankr.W.D.Tex.1992), but this conflict is explicitly recognized in the text of the statute itself, which requires the bankruptcy trustee to balance the need for expeditious conduct against the "best interests of parties in interest," 11 U.S.C. § 704(1).

We have found no cases supporting McGee's contention that the requirement of expeditious conduct is limited to the actual closing of the bankruptcy estate, and numerous cases holding that the requirement applies to the liquidation of the estate. *Hyman v. Plotkin (In re Hyman)*, 123 B.R. 342, 347 (Bankr.9th Cir.1991), *aff'd*, 967 F.2d 1316 (9th Cir.1992); *Lowe v. Sheinfeld, Maley & Kay, P.C. (In re Saunders)*, 155 B.R. 405, 414 (Bankr.W.D.Tex.1993); *Holland v. First Fed. Sav. & Loan (In re Terrell)*, 27 B.R. 130, 132 (Bankr.W.D.La.1983); *BeVier v. Warder (In re BeVier)*, 12 B.R. 75, 77 (Bankr.D.S.D.1981). McGee's argument may have merit as a matter of grammar, but it is largely meaningless in light of the overriding nature of the duty to close the estate expeditiously.

■ We conclude that § 704(1) imposed on McGee an affirmative duty to reduce the Hutchinsons' property to money as expeditiously as was compatible with the interests of the Hutchinsons and the other interested parties. So construed, the statute itself provides the necessary standard of care. The issue is not whether McGee acted reasonably in general, as the bankruptcy court viewed it, but whether she acted "as expeditiously as [was] compatible with the best interests" of the Hutchinsons and the other interested parties. Stated somewhat differently, the Appellants had to show that the delays in selling the Hutchinsons' property were not reasonable given a standard of expeditious conduct by a bankruptcy trustee.[1]

Discretion and judgment are irrelevant to the application of this rule. Therefore, the bankruptcy court erred in "taking into consideration the considerable discretion enjoyed by bankruptcy trustees." *Yadkin II*, 132 B.R. at 832. Appellants do not challenge a discretionary decision of the trustee. Here, the only discretionary decision made by McGee was her decision to accept Holbrook's offer. What Appellants challenge is not McGee's exercise of discretion regarding the Holbrook sale, but her expedition in obtaining the information necessary to make that decision. Once she accepted the Holbrook offer, she moved with expedition in applying to the bankruptcy court for approval of the sale.

### B. The Bankruptcy Court's Findings

■ The bankruptcy court found that McGee did not breach her duties under § 704(1). *Yadkin II*, 132 B.R. at 837. We review this finding for clear error. Fed. R.Bankr. 8013; *cf. Bonds v. Mortensen & Lange*, 717 F.2d 123, 125 (4th Cir.1983) ("findings of negligence are generally treated as findings of fact"). Although the bankruptcy court did not analyze McGee's conduct under the correct standard of care, we conclude that the court's factual findings are sufficient to support its conclusion that McGee did not breach her duties.

In analyzing whether McGee failed to liquidate the Hutchinsons' estate "as expeditiously as is compatible with the best interests of parties," two questions must be asked. First, did McGee expeditiously determine whether Holbrook's offer represented the best price available at the time the property was for sale? Second, once McGee determined that Holbrook's offer should be accepted, did she act expeditiously to obtain the bankruptcy court's approval of the sale?

McGee contends that the delay from September 2 to December 14 in evaluating and eventually accepting Holbrook's offer was justifiable because she had to investigate whether the price Holbrook offered was the

---

1. We shall use "expeditious" and "expeditiously" as shorthand for the duty "to close the estate as expeditiously as is compatible with the interests of the parties in interest." Where we refer to a duty to act expeditiously, therefore, that duty incorporates the balancing of expeditious conduct against the interests of the parties.

best available at that time. Her efforts in this regard were hampered because the bankruptcy estate lacked any ready cash with which to obtain an appraisal of the Hutchinsons' property. As a result, McGee was forced to rely upon the creditors to obtain an appraisal. The bankruptcy court determined that the lack of ready cash in the Hutchinsons' estate justified McGee's delay in obtaining a new appraisal, and that the uniqueness of the asset—the market for dairy farms is much smaller than the market for family residences—justified McGee's lengthy investigation into the market value of the farm. Given the variation in the valuations of the farm, ranging from $150,000 in the Hutchinsons' petition for bankruptcy to $135,000 offered by Holbrook to an appraisal for $112,000, McGee's caution in ascertaining the value of the property is understandable. In these circumstances, the bankruptcy court did not clearly err in finding that McGee's delay in accepting Holbrook's offer was justified.

Once McGee decided on December 14, 1981, to accept Holbrook's offer, she was obligated under § 704(1) to act expeditiously in obtaining the approval of the bankruptcy court for the sale. Shortly after December 14, Holbrook withdrew his initial offer. Precisely when Holbrook made his $122,000 reduced offer is not clear from the record, but McGee admitted at trial that she knew of the offer by January 8, 1982. Thus, any delays in McGee's actions between December 14, 1981, and January 8, 1982, were justified by Holbrook's withdrawal of his initial offer.

McGee did not apply to the bankruptcy court for approval of the sale until April 1, 1982, nearly three full months after receiving the reduced offer. McGee contends that this delay occurred because the parties in interest (i.e., the Hutchinsons, the Bank, and the Newmans) did not promptly respond to her request that they consent to the sale. McGee further contends that her decision to obtain the approval of the parties in interest was justified because 11 U.S.C. § 363(f) (Supp. II 1978) (amended 1984) gave her two

options in pursuing the approval of the bankruptcy court.[2] McGee argues that she could either have obtained the lienholders' and the Hutchinsons' consent before selling the Hutchinsons' property, *see* 11 U.S.C. § 363(f)(2), or she could have obtained just the Hutchinsons' consent, given notice to the lienholders of her intent to sell, and then sold the property pursuant to a court order either after a hearing or after the lienholders had had a sufficient opportunity to request a hearing, *see id.* § 363(f)(3).

McGee argues that her choice to obtain the consent of the lienholders was reasonable, even under a standard of expeditious conduct, because of the delays that could have resulted from an adversarial court hearing. In contrast, Appellants argue that neither the Hutchinsons nor the lienholders could have forced an adversarial hearing, and thus that the threat of such a hearing did not justify McGee's obtaining the consent of the parties in interest before submitting the sale to the bankruptcy court. The Bankruptcy Code, however, does not support Appellants' argument.

Under § 363(f), McGee could have sold "property *under subsection (b)* ... of this section free and clear of any interest in such property of an entity other than the estate, only if— ... (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of such interest." 11 U.S.C. § 363(f)(3) (emphasis added).[3] Subsection (b) provides that the "trustee, *after notice and a hearing,* may use, sell, or lease, other than in the ordinary course of business, property of the estate." (Emphasis added.) The phrase "after notice and a hearing" is defined in § 102, which provides that the phrase

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

---

**2.** Section 363(f) provides other options not relevant to McGee's decision in this case.

**3.** The 1984 amendment substituted "all liens on such property" for "such interest" at the end of the quotation. *See* 11 U.S.C. § 363(f)(3) (1988).

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act. . . .

11 U.S.C. § 102 (Supp. II 1978). Under §§ 102 and 363(f), therefore, when a party with an interest in estate property requests a hearing, a trustee generally cannot sell the property until after a hearing has been held.

The Bankruptcy Rules reinforce this point. In 1982, when Holbrook offered to buy the property, Bankruptcy Rule 606(b)(3) provided that where a lienholder objected to a proposed sale free of liens, "the matter became an adversary proceeding under the former Part VII rules." 8 *Collier on Bankruptcy, supra*, ¶ 6004.02[1], at 6004–6. Similarly, Bankruptcy Rule 6004(e) currently requires a hearing where parties holding an interest in the property object to the property's sale.

Although the Code does not define the term "party in interest," the term "is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." *White County Bank v. Leavell (In re Leavell)*, 141 B.R. 393, 399 (Bankr.S.D.Ill.1992); *see Kapp v. Naturelle, Inc. (In re Kapp)*, 611 F.2d 703, 706–07 (8th Cir.1979). Here, the "parties in interest" comprise both the lienholders and the Hutchinsons, who by virtue of their ownership of the dairy farm had a pecuniary interest in its sale.[4] *Cf. White County Bank*, 141 B.R. at 399 (debtor with a right of exemption in estate property is a party in interest). Either the Hutchinsons, the Newmans, or the Bank, therefore, could have forced an adversarial hearing in the event they were dissatisfied with the terms of the proposed sale.

In light of the delays inherent in litigation, the bankruptcy court did not clearly err in concluding that McGee was justified in seeking the consents of the parties in interest rather than chancing the possibility of an adversarial hearing. Having chosen to obtain the consent of the parties in interest, however, McGee was still obligated under § 704(1) to act expeditiously in seeking their consents.

The record does not indicate that McGee delayed seeking the consents. McGee knew of Holbrook's reduced offer by January 8, 1982, at the latest. On January 15, 1982, McGee mailed Sam Evans, the Hutchinsons' lawyer, a letter requesting that the Hutchinsons consent to the Holbrook sale. On January 18, 1982, she mailed letters to the Bank and the Newmans requesting their consent to the Holbrook sale. Northwestern Bank's consent was unnecessary following removal of the milking equipment that secured its lien. These dates do not indicate any great delay on the part of McGee.

In contrast, the parties in interest were anything but prompt in their responses. The Bank consented on January 27, 1982, although it is not clear when McGee received the consent. The Newmans signed their consent on January 31, 1982, but their attorney did not mail the consent form until February 15, 1982, and McGee did not receive the consent until February 19, 1982. Although Mr. Evans advised the Hutchinsons to consent to the sale, they never did so. They testified at trial that they had understood the consent form to be a complete waiver of the exemptions they claimed in the property. McGee eventually submitted the sale to the bankruptcy court without the Hutchinsons' approval. These facts indicate that the delay from January 8 to April 1, 1982, is largely attributable not to dilatory conduct on the part of McGee, but to the non-responsiveness of the parties in interest.

The delays in this case are troublesome. Nevertheless, while the overall eight month delay from September 2, 1981, to April 1,

---

4. A related question is whether the Hutchinsons' homestead exemption amounts to an "interest" in the property within the meaning of § 363(f). "The Bankruptcy Code does not define the word 'interest.'" *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n. 23 (6th Cir.1991), *cert. dismissed*, — U.S. —, 112 S.Ct. 1605,

118 L.Ed.2d 317 (1992). Although courts have recognized that general, unsecured claims do not constitute "interests" within the meaning of § 363(f), *see id.* (quoting *In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr.N.D.Ohio 1987)), no court has addressed whether a homestead exemption constitutes such an interest. We need not, and do not, address this question here.

1982, appears long, the bankruptcy court did not clearly err in concluding that the delay was justified given the circumstances surrounding the sale such as the lack of cash for obtaining an appraisal, the interference of third parties in removing equipment from the property and the resultant changes in Holbrook's offer, and the difficulties in obtaining the consent of the parties in interest. Because the delays in this case were reasonable, even under a standard of expeditious conduct, the bankruptcy court did not clearly err in finding that McGee did not violate her duties under § 704(1).

### IV. *Right to a Jury Trial*

Appellants also contend that under the Seventh Amendment to the Constitution they were entitled to a jury trial on their claim. The Seventh Amendment provides that: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend. VII. The Supreme Court has construed the phrase "Suits at common law" to mean " 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.' " *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989) (quoting *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 7 L.Ed. 732 (1830)) (emphasis added in *Granfinanciera* ). Parties thus have no right to trial by jury where equitable rights and remedies alone are at issue.

■ Parties do have a right to trial by jury, however, where they seek to enforce statutory rights that are analogous to common-law causes of action or seek remedies analogous to those available in common-law courts. In *Granfinanciera,* the Supreme Court set forth the analysis for determining when the Seventh Amendment entitles a party asserting statutory rights to a trial by jury:

"First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine

whether it is legal or equitable in nature." *Tull v. United States,* 481 U.S. 412, 417–418, 107 S.Ct. 1831, 1835–36, 95 L.Ed.2d 365 (1987) (citations omitted). The second stage of this analysis is more important than the first. *Id.,* at 421, 107 S.Ct. at 1837. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

*Id.* at 42, 109 S.Ct. at 2790.

■ Although many of the duties of a bankruptcy trustee are statutory, the basis for trustee liability is not. The basis for holding bankruptcy trustees liable is the equitable power of courts to enforce fiduciary duties. *See Lopez–Stubbe v. Rodriguez–Estrada (In re San Juan Hotel Corp.),* 847 F.2d 931, 937 (1st Cir.1988); P.D. Finn, *Fiduciary Obligations* 1 (1977) (noting that fiduciary duties developed in equity). Notwithstanding the superficial resemblance of Appellants' claim to an action for common law negligence, their claim is fundamentally equitable in nature, comparable to an action for breach of trust seeking to compel the trustee to redress the breach. *See Restatement (Second) of Trusts* § 174, 199(c) (1959). At common law, "such actions were within the exclusive jurisdiction of courts of equity." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 567, 110 S.Ct. 1339, 1346, 108 L.Ed.2d 519 (1990); Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 197, at 188 (4th ed. 1988) ("Trusts are, and have been since they were first enforced, within the peculiar province of courts of equity."). Because Appellants' claim for breach of fiduciary duty is equitable in nature, it follows that they were not entitled to a jury trial. *Baskin v. Wade (In re Brenner),* 119 B.R. 495, 496–97 (Bankr. E.D.Pa.1990); *Grassmueck v. Foster (In re E Z Feed Cube Co.),* 115 B.R. 684, 689 (Bankr.D.Or.1990). *But see Bertholet v. Harman (In re Bertholet),* 126 B.R. 413, 416 (Bankr.D.N.H.1991) (holding that parties were entitled to a jury trial because action

against trustee was analogous to an action for negligence). The bankruptcy court therefore did not err in refusing Appellants' request for a trial by jury.

## V. *Bifurcation*

 Appellants further contend that the bankruptcy court erred in trying their claims against McGee prior to and separately from McGee's cross-claims against the creditors who removed the milking equipment from the Hutchinsons' property. The bankruptcy court ordered separate trials under Bankruptcy Rule 7042, which incorporates Federal Rule of Civil Procedure 42(b). We review decisions to bifurcate trials for abuse of discretion. *Dixon v. CSX Transp., Inc.,* 990 F.2d 1440, 1443 (4th Cir.1993).

Appellants contend that the bankruptcy court abused its discretion because, by trying their claims prior to and separate from McGee's cross-claims, the court prejudiced McGee's claims against the creditors. Appellants contend that any finding of negligence on the part of McGee would be a complete defense to the creditors' liability under North Carolina contributory negligence principles. There are at least two problems with this argument. First, the party supposedly being prejudiced here is McGee, the party who requested bifurcation. Second, the action against the third-party creditors is for violation of the automatic stay provisions of 11 U.S.C. § 362 (Supp. II 1978) (amended 1982, 1984, 1986 & 1990). North Carolina contributory negligence principles are not relevant to an action for damages under § 362(h) for violation of the automatic stay. We conclude that the bankruptcy court did not abuse its discretion in bifurcating the trial.

## VI. *Duty to Preserve Property*

In their complaint, Appellants alleged that McGee had breached her fiduciary duties by failing to preserve the property of the bankruptcy estate. *See Estate of Reich v. Burke (In re Reich),* 54 B.R. 995, 998 (Bankr. E.D.Mich.1985). Specifically, Appellants claimed that McGee, "after being placed on notice of the removal of both real and personal property from the dairy farm, failed to take any steps whatsoever to prevent further removal of the property." (J.A. 43–44.) We agree with Appellants that because the bankruptcy court made no factual findings on this issue, remand is necessary for further proceedings.

## VII. *Formal Factual Findings*

Finally, Appellants complain that the bankruptcy court's opinion contains no formal findings of fact. In actuality, the bankruptcy court issued a detailed, published opinion discussing both the law and facts of this case. This claim is without merit.

## VIII. *Conclusion*

Although we find no reversible error in the findings of the bankruptcy court, we conclude that remand is necessary to address Appellants' claim that McGee breached her fiduciary duty to preserve the property of the estate.

*AFFIRMED IN PART AND REMANDED.*