In re Daniel Russell LEAVELL, Debtor.

WHITE COUNTY BANK, Plaintiff,

v.

Daniel R. LEAVELL, Eva Lovene Leavell, et al., Defendants.

v.

Margaret KARNES, Independent Administrator of the Estate of Gibson Karnes, deceased, Terry Sharp, and Bruegge & Becker, Third Party Defendants.

Bankruptcy No. 85–40274.
Adv. No. 90–0085.

United States Bankruptcy Court,
S.D. Illinois.

May 18, 1992.

Darrell Dunham, Murphysboro, Ill., for debtor.

Thomas Schanzle–Haskins, Springfield, Ill., Mark Stanley, Carmi, Ill., for White County Bank.

William A. Alexander, Benton, Ill., for Margaret Karnes.

Mark Bauman, Belleville, Ill., for Terry Sharp.

Randall Scherck, St. Louis, Mo., for Fidelity & Dep. Co.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Before the Court is a consolidated case in which Daniel and Eva Leavell seek damages for an alleged breach of fiduciary duty by Gibson Karnes, who served as trustee in the Chapter 7 bankruptcy case of Daniel Leavell. The Leavells originally filed three separate actions against Karnes—an adversary proceeding in this Court, a state court lawsuit containing similar allegations, and a third party complaint in a mortgage foreclosure proceeding brought by the White County Bank in state court.[1] The state court actions were removed to the United States District Court for the Southern District of Illinois, which referred the two cases to this Court with directions to consolidate them with the pending adversary proceeding.

The Leavells have filed an amended complaint alleging that trustee Karnes breached his fiduciary duty to them in four ways:[2] first, Karnes allowed a mortgagee-in-possession, Northern Trust Company, to manage oil-producing properties in an unlawful manner, exposing Daniel Leavell to potential personal liability for the clean-up of that property; second, Karnes failed to close Daniel Leavell's bankruptcy case in a timely manner, increasing the debtor's personal liability for interest and penalties on nondischargeable tax claims; third, the trustee failed to object to an excessive administrative claim by the trustee's attorney, Terry Sharp, thereby reducing the amount that would have been paid on nondischargeable tax claims and increasing the debtor's personal liability; and, finally, trustee Karnes failed to abandon certain real estate mortgaged by the Leavells to the White County Bank until the property value had declined below the mortgage balance, thereby subjecting Eva Leavell to personal liability for the deficiency.

Following the death of Gibson Karnes on July 5, 1991, his wife, Margaret Karnes, was substituted as defendant in her capacity as independent administrator of Gibson Karnes' estate. Margaret Karnes has filed a motion seeking summary judgment on the Leavells' amended complaint, which the Leavells oppose. In addition, both the White County Bank and the debtor have filed motions for summary judgment in the mortgage foreclosure action that is part of this consolidated case.

## I.

The Court will first consider the motion for summary judgment on the Leavells' fiduciary duty complaint. In her motion, Margaret Karnes argues that Gibson Karnes, as trustee, owed no duty to either Daniel Leavell, the chapter 7 debtor, or to Eva Leavell, a creditor whose claim was disallowed. She asserts that even if Karnes owed such a duty, the Leavells have alleged insufficient facts to support their claim of breach of fiduciary duty. Specifically, Karnes asserts with regard to operation of the debtor's oil wells that these properties were at all times in the possession and control of Northern Trust as mortgagee-in-possession and that the trustee is not liable for any lapse in bonding of these wells. Further, Karnes denies

---

1. The Leavells' third party complaint in the mortgage foreclosure proceeding was filed on April 4, 1990. A few days later, on April 10, 1990, the Leavells filed the state court action containing additional counts and, simultaneously, filed the adversary proceeding in this Court, which restated all the counts in the two state court proceedings.

2. In addition to the counts against trustee Karnes, the Leavells' original complaints included counts against Terry Sharp, who served as attorney for Karnes, and the law firm of Bruegge and Becker, which formerly represented Daniel Leavell in his bankruptcy case. Bruegge and Becker settled the counts against them and were dismissed as defendants. Terry Sharp filed a motion for summary judgment, which the Court granted after finding that Sharp, as counsel for the trustee, owed no fiduciary duty to the Leavells.

that the trustee unduly delayed closing the debtor's estate and asserts that the debtor by his own actions served to prolong the process of estate administration. Finally, Karnes asserts that the trustee had no basis to object to the administrative claim of Terry Sharp and notes that the debtor himself raised no objection to the claim until more than a year after it had been approved by this Court.

## A. Factual Background

The debtor, Daniel Leavell, filed a Chapter 11 bankruptcy petition on July 17, 1985. His wife, Eva Leavell, did not file or join in this petition. On December 12, 1985, the Chapter 11 petition was converted to Chapter 7. Gibson Karnes was appointed as trustee and Terry Sharp was appointed as attorney for the trustee.

In his schedule of real property, the debtor listed three separate oil and gas interests. Two of the interests—the Gershbacher and McCardy leases (items 7 and 8)—are not at issue in this case. The third listing, item 10 of schedule B–1, referred to "oil and gas interests used as collateral in Northern Trust debt." These interests were identified in a twelve-page attachment to the petition setting forth the various oil and gas leases and the legal descriptions of land covered by the leases. The oil interests were valued at approximately $1.8 million and secured a debt to Northern Trust of $16.5 million.

Upon the debtor's bankruptcy filing, Northern Trust sought relief from the automatic stay to continue a state court foreclosure proceeding it had filed a few days earlier. On September 6, 1985, this Court granted Northern's motion to terminate the stay as to the debtor's oil and gas interests subject to its mortgage. Northern then filed in state court to be placed in possession of these oil and gas interests. On December 10, 1985, Northern became mortgagee-in-possession of the debtor's oil properties. The debtor's bankruptcy case was subsequently converted to Chapter 7, and Gibson Karnes accepted his appointment as Chapter 7 trustee on December 20, 1985.

In December 1987, the debtor filed a "Request for Adequate Protection" with this Court. The debtor alleged that Northern Trust, while acting as mortgagee-in-possession of the debtor's oil and gas wells, had failed to keep bonds posted on the wells as required by the state of Illinois. Asserting that Northern had not paid its bond in more than a year, the debtor surmised:

> [I]n the event the oil and gas wells are determined by the [state] to have caused salt water damage, failed any integrity test, or caused a contamination of the fresh water supply in the area where the oil and gas wells are being operated, ... the Northern Trust Company will abandon its collateral and the [debtor] will then be the remaining lessor under the lease and the operator of the oil wells.

The debtor continued:

> As mortgagee-in-possession, [Northern] has a fiduciary duty to the [debtor] and the creditors and the trustee of this estate to insure [that] the bonds remain current and further that the oil and gas wells are operated in a proper manner as [sic] to avoid any liability to this estate or to the debtor.

The debtor requested that Northern be removed as operator of the wells for having breached its duty as mortgagee-in-possession and, further, that Northern be required to obtain the necessary bond for operation of the oil and gas leases.

Attached to the debtor's request was a letter informing Northern's attorney that the Illinois Department of Mines and Minerals had contacted the debtor concerning a lapse in bonding of the debtor's wells. In this letter, debtor's counsel stated: "It is our understanding that Northern Trust was placed in receivership of the wells in Illinois and that it is their responsibility to over-see the running of these wells." A second letter from Northern's attorney to Terry Sharp, the trustee's attorney, referenced a fifteen-page list of wells that were to be shut down unless a replacement bond was furnished and a three-page list showing abandoned wells that had not been plugged according to state regulations. Northern's attorney stated:

The wells being operated by Delta Oil Company [Northern's operator] as mortgagee-in-possession will be covered by Delta's blanket bond. *However, there are many wells on both lists which are not involved in the Northern Trust mortgages.* This information is provided to you so that you will know that bonds have been provided *as to those wells with which Northern is involved.*

(Emphasis added.)

At hearing on the debtor's request held January 7, 1988, Northern again represented that a bond had been issued to "cover all of the leases which Northern has an interest in and which are currently being operated by [Delta]." The Court denied the debtor's request for adequate protection but ordered Northern to supply the debtor with proof of bond on the wells within 10 days.[3]

At this time the debtor also filed a motion in state court to have a receiver appointed as to the oil properties being foreclosed upon by Northern Trust. This motion similarly alleged that Northern had allowed the bond posted for operation of the oil and gas leases to lapse on the subject properties. On September 27, 1988, the state court denied the debtor's motion, finding that the debtor lacked standing to seek appointment of a receiver since the oil properties were part of the debtor's bankruptcy estate and had not been abandoned by the trustee.[4]

The debtor then filed a motion for abandonment in this Court. The debtor alleged that the oil interests listed in his petition were without value and burdensome to the estate. Northern responded by proposing to waive its claim against the debtor's oil interests to the extent of $50,000 if the trustee would sell these properties pursuant to 11 U.S.C. § 363. Both Northern and the trustee, citing this potential benefit to the estate, objected to the debtor's motion

for abandonment. On October 13, 1988, the trustee filed his complaint to sell the oil properties free and clear of liens at the request of a secured creditor.

On November 7, 1988, while the abandonment motion was pending, the debtor filed a further motion in this Court to remove the Chapter 7 trustee or have an examiner appointed. The debtor alleged that the trustee had failed to obtain the required bond for operation of the oil and gas wells and had failed to inquire of Northern Trust on a regular basis concerning its operation of the wells.

On December 6, 1988, the parties entered into a Settlement Agreement and Mutual Release on the debtor's motion to remove trustee. In this agreement, Northern and the debtor agreed to compromise the litigation between them by dismissing both the mortgage foreclosure action and the debtor's counterclaim, with the debtor paying Northern $200,000 for the release of its lien on the debtor's oil properties. The agreement provided that, upon receipt of this payment, the trustee would cause the abandonment of Daniel Leavell's interest in the mortgaged properties and all other property remaining in the estate. It was further agreed that Northern would deliver possession of the oil properties to Daniel Leavell on the date the bankruptcy court entered an order abandoning them to the debtor and that the debtor would then cause the wells previously subject to Northern's lien to be transferred to and covered by his bond.[5]

On January 11, 1989, the Court entered its order approving the settlement agreement. The Court reiterated the parties' agreement that the trustee would abandon the oil interests to the debtor once payment had been made and the oil interests had been released by Northern. The Court's

---

**3.** Northern apparently failed to comply with this order. However, the debtor filed no motion to enforce the Court's order to supply proof of bonding.

**4.** The state court's order reflected that the debtor agreed to substitution of the trustee in place of the debtor as a party in the foreclosure proceeding so that the debtor was no longer a party

with standing to seek appointment of a receiver. *See* Ill.Rev.Stat., ch. 110, par. 15–306.

**5.** The agreement further provided that the debtor would release Northern of liability for any cause of action related to Northern or Delta Oil Company's operations as mortgagee-in-possession.

order stated that upon dismissal of the foreclosure proceeding and counterclaim in state court and upon Northern's dismissal as mortgagee-in-possession, the trustee

> shall as of that time *be deemed to have abandoned to the debtor the oil and gas interests* and the remaining property, and the trustee is authorized and directed to thereafter take such action and execute such other documents reasonably requested of him to further evidence such abandonment.

(Emphasis added.)

The state court litigation was subsequently dismissed on January 13, 1989, and Northern was discharged as mortgagee-in-possession.

On January 18, 1989, Terry Sharp filed an application for attorney fees and costs for his representation of the trustee from January 1986 to January 1989. No objections were filed to this application. In March 1989, the trustee sought and obtained authority to employ a tax accountant to aid in closing the estate and, in November 1989, filed an interim report indicating that the case was ready for the final report to be filed later that month. On November 13, 1989, the debtor's attorney filed an application for payment of attorney's fees under 11 U.S.C. § 330. Objections were filed, and hearing on this fee application was held on January 3, 1990.

On January 29, 1990, the trustee filed his final report and account, along with an application to abandon real estate. The trustee's application listed several items of real estate to be abandoned. The application did not refer to the oil properties mortgaged to Northern Trust except by attachment of the twelve page list of legal descriptions that had identified these interests in the debtor's petition.

In March 1990, after obtaining new counsel, the debtor filed a motion to permit the

filing of an objection to the fee application of Terry Sharp, which this Court denied as untimely. A further motion was filed on behalf of Eva Leavell for leave to file a proof of claim. The Court granted Eva Leavell's motion to file claim but disallowed the claim as untimely.

At hearing on April 10, 1990, the debtor argued regarding the motion for abandonment that the trustee should not be allowed to abandon oil-producing properties that had been operated in violation of environmental laws.[6] The debtor acknowledged that no environmental authority had initiated litigation or other proceeding concerning the purported violations but requested that the Court delay closing the estate to determine the extent of environmental problems alleged by the debtor.[7] The Court, finding that estate funds would be depleted by payment of administrative costs and nondischargeable tax obligations of the debtor, declined to keep the estate open and overruled the debtor's objection to abandonment.

On appeal the district court affirmed the Court's order disallowing Eva Leavell's claim and denying Daniel Leavell's motion to file objection to Terry Sharp's attorney fees. The district court, however, remanded the case to this Court to make a determination as to whether the oil-producing properties posed an immediate and identifiable risk to public safety and health so that appropriate regulatory authorities could be informed prior to abandonment. *See Leavell v. Karnes*, 143 B.R. 212 (S.D.Ill.1990). The court in its opinion referred to the trustee's obligation under 28 U.S.C. § 959(b) "to manage and operate property *in his possession* as ... trustee" and specifically found that the trustee

> may be held liable for any violations of state or federal environmental laws that occurred *while the oil-producing properties were in the trustee's possession.*"

---

**6.** The debtor specifically objected to abandonment of property in "item 7" of the trustee's application. Item 7—the Gershbacher lease—was not part of the interests covered by Northern's mortgage.

**7.** The debtor referred to ongoing litigation with the Department of Mines and Minerals regarding bonding requirements but noted that this litigation did not "implicate[ ] environmental concerns."

*Leavell v. Karnes*, at 219 (emphasis added).[8]

Upon remand, this Court ruled that it had no jurisdiction to make a determination as to the oil properties mortgaged to Northern Trust because they were previously abandoned from the bankruptcy estate by the Court's order of January 11, 1989, which provided for abandonment of the subject properties upon dismissal of the state court litigation and Northern's discharge as mortgagee-in-possession. The debtor filed an appeal from this ruling, which is currently pending before the district court.

Meanwhile, following the hearing on April 10, 1990, the debtor and Eva Leavell filed the instant action for breach of fiduciary duty against trustee Karnes. In resisting the trustee's motion for summary judgment, the Leavells argue that there is sufficient evidence of the trustee's breach of fiduciary duty, under either a negligence or willful and deliberate standard of care, to withstand summary judgment. The debtor asserts that the trustee's failure to bond oil wells that Northern had not bonded, the trustee's delay in closing the estate while tax penalties accrued, and the trustee's failure to object to improper charges contained in Terry Sharp's fee petition all showed intentional disregard for the rights of Daniel and Eva Leavell so as to preclude summary judgment for the trustee.

### I. Trustee's Fiduciary Duty

■ Under 11 U.S.C. § 704(1), the trustee is required to "collect and reduce to money the property of the estate ..., and close such estate as expeditiously as is compatible with the best interests of the *parties in interest.*" (Emphasis added.) The Code does not define "party in interest"; however, it is generally understood to include all persons whose pecuniary in-

terests are directly affected by the bankruptcy proceedings. *In re Kapp*, 611 F.2d 703 (8th Cir.1979); *In re Transatlantic and Pacific Corp.*, 216 F.Supp. 546 (S.D.N.Y.1963); *see In re Woodmar Realty Co.*, 241 F.2d 768 (7th Cir.1957); *In re Olsen*, 123 B.R. 312 (Bankr.N.D.Ill.1991). Thus, the Chapter 7 trustee has the duty to preserve estate assets for the benefit of creditors, who will share in distribution of the estate. Likewise, if the debtor has an interest, *e.g.*, a right of exemption in estate property, that may be harmed by the trustee's failure to preserve assets, the trustee owes a corresponding duty to the debtor. *In re Reich*, 54 B.R. 995 (Bankr.E.D.Mich. 1985); *see Yadkin Valley Bank & Trust Co. v. McGee*, 819 F.2d 74 (4th Cir.1987).

■ In the present case, the debtor asserts that he has standing to sue trustee Karnes for breach of duty because he has incurred liability for penalties and fines as a result of the trustee's failure to bond oil wells subject to Northern's mortgage while the wells were property of the estate. The debtor has submitted a copy of a decision from the hearing officer for the Illinois Department of Mines and Minerals, Oil and Gas Division, in which the debtor is ordered to provide a $25,000 blanket bond for wells listed in the Department's notice and to pay a $225 civil penalty. Assuming the debtor's asserted liability for wells that were not bonded during the course of the Chapter 7 bankruptcy, it is evident that the debtor has a pecuniary interest in the proper management of estate property.[9] The debtor, accordingly, is a "party in interest" within meaning of § 704(1) and has standing to bring this action to assess the trustee's responsibility for bonding the wells in question.

■ The remaining plaintiff, Eva Leavell, is an unsecured creditor whose claim

---

8. The district court's opinion contains repeated references to the trustee's "operation" of the oil-producing properties and to the trustee's management of the properties while they were in the "possession and control" of the trustee. The court's opinion does not reflect any consideration of the fact that Northern Trust had obtained relief from stay and operated the oil properties as mortgagee-in-possession.

9. The debtor further asserts that he is potentially liable for $700,000 in environmental damages on the wells that Northern did not bond. There is no indication of the source of this liability, and only the debtor's personal opinion is offered to substantiate his claim. The Court is unaware of any action by regulatory authorities to assess the debtor for environmental damage.

was disallowed as untimely filed. Eva Leavell argues that the trustee nevertheless owes her a fiduciary duty because she suffered the detriments of the bankruptcy filing, *i.e.,* the automatic stay, and should be entitled to the benefits.

The Court finds this argument to be totally without merit. Having failed to file notice of her claim, Eva Leavell was nothing more than a stranger to the bankruptcy proceeding with no interest in or claim to estate assets.[10] The trustee owed no duty to her as a creditor filing an untimely claim and, in fact, was obligated to object to allowance of such claim as improper. *See* 11 U.S.C. § 704(5). As the primary objecting party, a Chapter 7 trustee has an adversarial relationship with individuals filing claims in an insufficient manner and cannot be said to be a fiduciary of such persons. *Cf. In re Padget,* 119 B.R. 793, 798 (Bankr. D.Colo.1990) (holding that unsecured creditor must provide sufficient legal notice of claim to trustee in order to be treated as creditor by trustee). Accordingly, Eva Leavell is without standing to bring this action for breach of fiduciary duty, and the Court grants Karnes' motion for summary judgment as to her.

## II. *Factual Basis for Complaint*

Karnes argues that even if a duty is owed to the debtor, there are insufficient facts to show any breach of duty by the trustee. In this regard, Karnes asserts that a willful and deliberate standard, rather than a negligence standard, is appropriate and that the trustee is entitled to immunity for his actions concerning estate property. The Court finds it unnecessary to consider the appropriate standard of care or the extent of the trustee's immunity because the facts as alleged by the debtor fail to support the allegations of his complaint under even the negligence standard advocated by the debtor.

### A. Failure to Bond Oil Wells

In an affidavit submitted in response to the trustee's motion for summary judgment, the debtor lists certain oil wells that were not bonded by either Northern or the trustee during the bankruptcy proceeding.[11] The debtor does not dispute that these wells were part of the collateral for the Northern Trust mortgage or that Northern obtained relief from stay and became mortgagee-in-possession as to these wells prior to the time Karnes was appointed as Chapter 7 trustee of the estate.

The debtor, while previously arguing that Northern was responsible as mortgagee-in-possession for operating the oil wells and keeping the bonds on the wells current, now asserts that the trustee had the duty to bond the wells that Northern chose not to bond. It is the debtor's contention that, because these wells were not bonded by Northern, Northern was never in "actual possession" of the wells and that it was thus the trustee's duty to bond the wells and to "make sure they were being operated" in compliance with applicable law.

 The Court finds the debtor's argument to be both circuitous and contrary to authority governing the rights and duties of a mortgagee-in-possession under Illinois law. In *Marcon v. First Federal Savings & Loan,* 58 Ill.App.3d 811, 16 Ill. Dec. 253, 374 N.E.2d 1028 (1978), relied upon by the debtor, the court found that a mortgagee having only "constructive possession" of mortgaged premises had no liability for damages caused by unsafe conditions. The mortgagee in *Marcon,* however, had neither sought nor obtained a court order placing it in possession as part of the state court foreclosure proceedings. Once a mortgagee has exercised its statu-

---

**10.** Review of the record leads to the inescapable conclusion that Eva Leavell's claim was filed as an attempt to gain standing for purposes of this adversary proceeding. The Leavells filed their complaint for breach of fiduciary duty within hours after the April 10, 1990, hearing at which Eva Leavell's claim was denied. Further, her counsel conceded in presenting the claim that Eva Leavell "realized that there [would] be no distribution to her" and that her claim was filed

"merely as a recognition" of her status as creditor of Daniel Leavell.

**11.** The wells in question are on the Headley, Henry, Stifle, and Brashears leases. While the debtor additionally refers to an "Adams" lease, this lease does not appear to be identified by that name in debtor's petition.

tory right to be placed in possession of mortgaged property, *see* Ill.Rev.Stat., ch. 110, par. 15–303, the mortgagee obtains actual possession and control of the premises and thus becomes responsible for maintenance of the property. *See Marcon*, 16 Ill.Dec. at 255, 374 N.E.2d at 1030.

In the present case, Northern gained actual possession of the subject oil wells by the state court's order of December 10, 1985, placing it in possession. Northern did not, by failing to bond the wells in question, become divested of actual possession or relieve itself of the responsibility to maintain the property. Upon his appointment as Chapter 7 trustee, moreover, trustee Karnes took only the debtor's right and interest in the mortgaged premises. *See* 11 U.S.C. § 541(a). Since the debtor no longer had possession of the oil properties but had, instead, been dispossessed of the premises by the state court's order, the trustee had no possession or control over the oil properties and had no obligation to maintain the property by bonding the wells.

The trustee's only interest in the oil properties prior to abandonment was a residual right to any excess value the properties might have had over and above the amount of Northern's mortgage. Given the improbability that the wells would yield any benefit for the estate, the trustee was not required to supervise Northern's operation of the oil wells to protect the debtor from personal liability in the event the debtor again obtained possession of the wells.[12] Rather, the trustee's duty to the debtor was limited to the extent the debtor's interest coincided with that of other parties in interest—specifically, the estate creditors. The Court finds, therefore, that under the

facts alleged by the debtor, the trustee did not breach any fiduciary duty to the debtor by failing to bond oil wells that Northern had not bonded as mortgagee-in-possession.

As a corollary to the debtor's argument regarding the trustee's responsibility for the unbonded wells, the debtor contends that the unbonded wells remain property of the estate because these wells were not abandoned to the debtor pursuant to the Court's order of January 11, 1989, approving the settlement agreement with Northern Trust. The debtor asserts that the order is ambiguous as to what was meant by "oil and gas interests" and that he intended to take only those wells that Northern had bonded. Accordingly, the debtor maintains that the trustee's duty as to the unbonded wells continued even after Northern released its interest in the oil properties upon being discharged as mortgagee-in-possession.

Contrary to the debtor's contention that the January 11, 1989, order is ambiguous, the first paragraph of the order specifically identifies "oil and gas interests" as those described in Exhibit A of the trustee's application to sell assets that was previously filed at the request of secured creditor Northern Trust. Exhibit A lists the oil interests that were identified in the debtor's petition as collateral for Northern's mortgage, including the leases containing the unbonded wells of which the debtor complains. Thus, the order of January 11, 1989, was unambiguous in referring to all the wells subject to Northern's mortgage and requires no interpretation as to the debtor's intent in entering into the settlement agreement with Northern.[13]

---

**12.** The debtor complains that he was helpless to protect himself from potential liability for unbonded wells while they remained property of the estate. The Court notes, however, that the debtor took no action to enforce the Court's order of January 7, 1988, requiring Northern to provide the debtor with proof of bond. The debtor, being concerned about his personal liability for the unbonded wells, cannot expect others to be more vigilant for his interests than he himself was.

**13.** Indeed, the debtor had previously filed a motion for abandonment of the same oil and

gas interests referenced in the January 11, 1989, order, and the parties agreed that the notice given on this abandonment motion was sufficient notice for purposes of the order. See transcript of December 6, 1988, hearing at page 11 and paragraphs C, D, and K of the January 11, 1989, order. It is disingenuous for the debtor to now contend that the unbonded wells were not included in the wells to be abandoned by the January 11, 1989, order, when the debtor's own motion referenced the same oil and gas interests affected by the Court's order.

The debtor asserts that the January 1989 order was in the nature of a consent decree and argues that the Court could disregard even unambiguous language if it were convinced that the parties meant something different from what they said. *See White v. Roughton,* 689 F.2d 118 (7th Cir.1982). Assuming that the order constitutes a "consent decree," the debtor's proffered evidence of the parties' intent provides no basis for altering the clear meaning of the language used here. The debtor asserts that the trustee's conduct indicated that he did not think all the wells had been abandoned because the trustee attempted further abandonment upon filing his final report and account. However, the trustee's motion for abandonment contained a listing of all the oil and gas interests mortgaged to Northern—not just the unbonded wells which the debtor contends remained in the estate after January 1989—and so fails to support the debtor's theory. Further, Northern's statements to Terry Sharp concerning wells that were "involved" in its mortgage prove nothing outside of the context in which they were made and do not indicate, as the debtor contends, that Northern intended to transfer only bonded wells. The Court has before it only the debtor's self-serving statements that he did not intend to take the wells that Northern had not bonded. The Court, accordingly, refuses the debtor's invitation to discard the unambiguous language of its January 1989 order.

■ The debtor asserts finally that the District Court's order of October 30, 1990, prohibiting abandonment of the debtor's oil interests until a finding of potential environmental risks could be made, constitutes "law of the case" and precludes any ruling by this Court that the wells had already been abandoned by the order of January 11, 1989. However, the effect of the January 1989 order providing for abandonment of oil and gas interests was to divest this Court of jurisdiction over such property, *see Brateman v. Brateman Bros., Inc.,* 135 B.R. 853 (Bankr.N.D.Ind.1991), and neither the trustee's later motion for abandonment nor the District Court's order could revest this Court with jurisdiction.

■ The Court finds no merit in the debtor's related contention of waiver by the trustee. It is axiomatic that a jurisdictional defect cannot be waived by the parties. Consequently, the trustee's failure to raise the jurisdictional issue at either the hearing on objection to abandonment held April 10, 1990, or on appeal from this Court's subsequent order did not alter the effect of the January 1989 order.

■ The Court finds, as provided in the January 11, 1989, order, that all the wells that were in the bankruptcy estate and subject to Northern's mortgage were abandoned to the debtor on January 13, 1989, upon dismissal of the state court litigation and Northern's discharge as mortgagee-in-possession. Since the wells were no longer property of the estate, the trustee had no obligation as to unbonded wells from that time to the present. Accordingly, the Court rejects the debtor's contention that the trustee breached his fiduciary duty in failing to bond the wells after the January 1989 order approving settlement.

## B. Delay in Closing Estate

■ The debtor asserts that the trustee improperly delayed closing the bankruptcy estate while nondischargeable tax penalties and interest accrued against the debtor. The debtor observes that, in *Yadkin Valley Bank v. McGee,* 819 F.2d 74 (4th Cir. 1987), a six-month delay by the trustee was found to be sufficient to raise an issue of fact regarding the trustee's duty under § 704(1) and asserts that, by comparison, the lengthy period of administration here demonstrates a breach of the trustee's duty to close the estate expeditiously. The debtor additionally contends that the trustee agreed to bring the estate to an immediate close following the settlement agreement with Northern in January 1989 but nevertheless delayed such closing until more than an year later.

It goes without saying that each bankruptcy case is unique, and the length of time required for administration will vary from case to case. While the present case has remained open for an inordinate period

of time, this time lapse alone fails to raise a factual issue concerning the trustee's breach of duty. Unlike in *Yadkin*, where fact questions existed regarding the trustee's inaction, the Court has before it undisputed facts, from its own records and the parties' affidavits, showing the complex nature of the case, the time-consuming litigation required to administer the debtor's estate, and the debtor's own actions that contributed to delay in closing the estate. The trustee was required to expend time and effort to obtain title evidence, tax returns, and information about property of the estate that should have been readily available to the trustee as part of the debtor's duty to cooperate. *See* 11 U.S.C. § 521(3), (4). The debtor fails to specify how the trustee unnecessarily prolonged administration of the estate, reiterating only that the trustee was aware that nondischargeable tax obligations were mounting against him. The debtor's allegations, without more, are insufficient to show a breach of duty by the trustee.

The settlement agreement approved in January 1989 contained no promise that the trustee would immediately close the estate but stated that the trustee "shall cause the abandonment of [the debtor's] interests in the mortgaged properties ... and no party hereto shall oppose or object to said abandonment." As discussed earlier, the properties were deemed abandoned upon dismissal of the state court litigation on January 13, 1989. The trustee subsequently employed a tax accountant to aid in closing the estate and was ready to file his final report in November 1989, when the debtor's attorney filed an application for payment of fees from the estate. Closing of the estate was postponed pending hearing on objections to this application, and the trustee thereafter filed his final report on January 29, 1990. At hearing on the final report, the debtor objected to abandonment of the oil properties, which has resulted in the estate remaining open until the present time.

As is evident from this review, there is no basis for the debtor's contention that the delay in closing the estate after January 1989 was due to the trustee's inaction.

Again, the debtor has failed to specify how the trustee acted improperly, complaining only about the length of time that elapsed before the filing of the trustee's final report. Based on the undisputed facts before it, the Court finds that the trustee breached no duty in attempting to close the estate after the January 1989 order approving settlement.

### C. Failure to Object to Administrative Claim

The debtor asserts that the trustee should have objected to the fee application of Terry Sharp as containing improper and excessive charges. As set forth above, no party, including the debtor, objected to the fee application filed by Terry Sharp until over a year after the time for objections had passed. The Court denied the debtor's motion to file objection as untimely, and this ruling was affirmed on appeal.

Under 11 U.S.C. § 704(5), the trustee has the duty "to examine proofs of claims and object to the allowance of any claim that is improper[.]" The debtor does not argue that the trustee failed in his duty to examine the claim of Terry Sharp but, rather, disagrees with the trustee's determination that the claim was proper. The Court views the debtor's argument as a "backdoor" attempt to object to Terry Sharp's attorney fees despite the Court's prior ruling that such objection was untimely. The debtor may not, by means of his action against the trustee, so extend the period for objecting to claims. The Court, accordingly, rejects the debtor's contention that the trustee breached his duty regarding the administrative claim of Terry Sharp.

The Court finds that no issue of fact remains as to the allegations of the plaintiffs' complaint. For the reasons stated, the Court grants summary judgment in favor of the defendant, Margaret Karnes, and against plaintiffs Daniel and Eva Leavell.

### II.

The Court has previously ruled on various affirmative defenses and counterclaims filed by the debtor in the mortgage fore-

closure action brought by the White County Bank. In his fifth affirmative defense, the debtor contends that the Bank's complaint for foreclosure should be dismissed with prejudice because the complaint was filed prior to abandonment of the mortgaged property in violation of the automatic stay.

The Bank responds that the property subject to its mortgage—seven acres of real estate in White County, Illinois—was included in the property abandoned by the trustee pursuant to the Court's order of January 11, 1989, or, in the alternative, was effectively abandoned on March 23, 1990, when no objection was filed within 15 days of the trustee's notice of abandonment. Thus, the Bank asserts, its mortgage foreclosure complaint filed on March 26, 1990, was not violative of the automatic stay. Even if the foreclosure complaint was filed before the property was abandoned, the Bank maintains that the complaint was not void but merely voidable and urges the Court to exercise its equitable powers to annul the automatic stay retroactively since no purpose would be served by requiring the Bank to refile its foreclosure complaint.

The Court's January 1989 order approving settlement with Northern provided for the abandonment of the debtor's oil and gas interests and "all other property remaining in the estate." "Remaining Property" was defined as "assets of the debtor not previously administered by the trustee," including certain vehicles and real estate.

The debtor contends that any attempted abandonment of the White County real estate pursuant to this language was ineffective because no notice was given to creditors concerning such property. The Court agrees. The order specifically limited notice of the settlement agreement to that previously provided on the debtor's motion for abandonment of oil and gas interests, and creditors received no notice regarding abandonment of other estate property. Since there can be no abandonment without notice sufficient to allow creditors to object, *see* Bankr.R. 6007(a),

the Bank's collateral was not abandoned by the Court's order and remained property of the estate after January 1989.

Rule 6007(a) states that an objection to abandonment may be filed within 15 days of mailing of the notice or within the time fixed by the court. The trustee's notice of abandonment filed on March 8, 1990, specifically provided for hearing on abandonment to be held April 10, 1990. Because objections could be filed any time prior to that hearing, there is no basis for the Bank's contention that abandonment became effective on March 23, 1990. Thus, the Bank's foreclosure complaint on the White County real estate was filed prior to abandonment so as to constitute a violation of stay.

While actions taken in violation of the automatic stay are generally void, a bankruptcy court may balance the equities to recognize exceptions to the rule when a mere technical violation is involved. *See Matthews v. Rosene,* 739 F.2d 249 (7th Cir. 1984); *United States of America v. Schwartz,* 119 B.R. 207 (9th Cir.BAP 1990); *In re Bresler,* 119 B.R. 400 (Bankr. E.D.N.Y.1990). In the present case, the Bank filed its foreclosure complaint a few days before abandonment of the property became effective on April 10, 1990. No further action was taken that could prejudice the debtor. The debtor has alleged no reason, and the Court finds none, to require the Bank to replead and start its foreclosure action anew. Accordingly, the Court will exercise its discretion under § 362(d) to annul the automatic stay retroactively and so validate the Bank's filing of its foreclosure complaint on March 26, 1990.

The Bank has filed a motion to sever its foreclosure proceeding from the fiduciary duty action against the trustee. Because of the Court's ruling granting summary judgment for the trustee, the Bank's motion is moot. However, the Court finds no basis for its continued jurisdiction over the foreclosure proceeding and, accordingly, will remand this action so that the Bank can pursue its foreclosure proceeding in state court.

For the reasons stated, the Court grants the Bank's motion for summary judgment as to the debtor's fifth affirmative defense and denies the debtor's motion for summary judgment. The Court further denies the Bank's motion to sever as moot and remands the foreclosure proceeding to state court.