**In re Gary SLACK, Susan Slack, d/b/a Gary's Riverside Diner, Debtors.**

**Gary and Susan SLACK, Plaintiffs,**

v.

**The SAINT PAUL/SEABOARD SURETY COMPANY and Allan J. Bentkofsky, Defendants.**

**Bankruptcy No. 87–00356.
Adv. No. 92–70224A.**

United States Bankruptcy Court,
N.D. New York.

Feb. 4, 1994.

Teresa A. White, Hauppauge, NY, for plaintiffs.

MacKenzie, Smith, Lewis, Mitchell & Hughes, Syracuse, NY, for defendants; Kevin J. O'Brien, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Presently before the Court is a motion by The St. Paul/Seaboard Surety Company and Allan J. Bentkofsky ("Defendants") for summary judgment, dismissing the complaint filed in this adversary proceeding by Gary and Susan Slack, d/b/a Gary's Riverside Diner ("Debtors") on the basis that the Debtors lack standing to sue the case trustee, as well as the surety company that bonded the trustee.

The motion was heard before the Court at a motion term in Syracuse, New York, on December 7, 1993. Having provided the parties with the opportunity to file memoranda of law on the issue of standing, the matter was thereafter submitted for decision on December 15, 1993. The trial scheduled for December 16, 1993, was adjourned pending a decision by the Court.

### JURISDICTION

The Court has core jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1) and (b)(2)(A).

### FACTS

On March 19, 1987, the Debtors filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.

§§ 101–1330) ("Code"). The case was later converted to one under Chapter 7 of the Code by an Order of this Court entered on October 20, 1989. Defendant Bentkofsky was initially appointed interim trustee on November 2, 1989, and subsequently appointed Chapter 7 trustee ("Trustee") on or about December 11, 1989. Pursuant to Code § 322, the Trustee filed a surety bond with the Court issued by Defendant St. Paul/Seaboard Surety Company.

At the time of the initial filing, the Debtors owned and operated a business known as Gary's Riverside Diner, located in Cortland, New York. The New York State Department of Taxation and Finance ("Department") had a tax warrant filed against the property in the amount of $55,323.08, and the Internal Revenue Service ("IRS") held a tax lien of approximately $58;153.00. *See* Defendant Bentkofsky's Affidavit, ¶¶ 17 and 18. During the course of the Chapter 11 case, both the Department and the IRS acquired administrative priority claims for post-petition taxes amounting to $33,750.00. *See id.* at ¶ 19. There were also claims held by three other creditors secured by the Debtors' equipment and fixtures totalling $16,500. *See id.* at ¶ 14.

As of the date of conversion to Chapter 7, the sole asset of the estate was the diner structure, including an addition, ("Diner") and the equipment and fixtures within. The Debtors did not own the land on which the Diner was located. A purchase agreement had been entered into by the Trustee in the amount of $71,000.00 for the Diner and the equipment therein on January 3, 1990. *See* Exhibit "E" of Defendants' Attorney's Affidavit. On January 20, 1990, the Diner and its contents were destroyed by fire. The Diner had previously been insured by the Debtors for $65,000.00 and the contents for $45,000.00.[1] *See* Exhibit "F" of Defendants' Attorney's Affidavit. However, the insurance policy had been allowed to lapse under the alleged belief that the Trustee was responsible for insuring the assets of the estate upon conversion. The Trustee was allegedly unaware of the lack of insurance until after the fire had occurred. *See* Defendant Bentkofsky's Affidavit, ¶ 11.

An adversary proceeding was commenced by the Debtors on December 10, 1992. The Debtors assert negligence on the part of the Trustee in not discovering the lack of insurance and in failing to procure insurance on the Diner and its contents.

## ARGUMENTS

Defendants contend that the Debtors lack standing to bring the adversary proceeding because the Trustee did not owe a duty to the Debtors to insure the Diner as the Debtors were not entitled to exempt the property and had no expectation of receiving any surplus from the bankruptcy estate upon liquidation of the assets.

Debtors argue that the Trustee owed a duty to them individually, as well as other creditors, to preserve the assets of the estate. Debtors claim a pecuniary interest in having the nondischargeable tax liens against them paid from the property of the estate, thereby reducing their own personal liability.

Defendants counter this argument by asserting that the nondischargeability of tax debts is not an interest protected pursuant to Code § 704 which lists the duties of a trustee.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure, applicable here pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment must be granted when there exists "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Federal Deposit Ins. Corp. v. Bernstein,* 944 F.2d 101, 106 (2d Cir.1991).

---

1. The prior insurance policy provided for 80% coverage, i.e. a potential recovery on the Diner of $52,000.00 (80% × $65,000). Debtors' petition lists the value of the Diner as "unknown". The policy also provided for coverage on the contents in the amount of $45,000. Schedule B–2 of the Debtors' petition, however, lists a value of $11,- 500, which includes equipment, fixtures and inventory. The total of these figures is $63,500.00. In their complaint, the Debtors allege an actual loss of $150,000 as to the Diner and $125,000 as to the fixtures and contents. *See* Complaint, ¶ XII.

Upon review of all the pleadings and exhibits submitted in connection with the instant motion and upon due consideration of the oral arguments presented at the hearing, the Court concludes that there are no unresolved issues of material fact precluding entry of summary judgment with respect to the issue of standing. Accordingly, the Court proceeds to the merits.

██ Upon the commencement of a Chapter 7 case, the trustee acquires generally all pre-petition property interests of the debtor as representative of the estate. *See In re Stanton,* 121 B.R. 438, 440 (Bankr. S.D.N.Y.1990). Pursuant to § 704(1) of the Code, a trustee has a duty to preserve estate assets in such a manner as to be "compatible with the best interests of parties in interest." *See In re Leavell,* 141 B.R. 393, 399 (Bankr. S.D.Ill.1992); *In re Reich,* 54 B.R. 995, 1002 (Bankr.E.D.Mich.1985). While "parties in interest" is nowhere defined in §§ 701–766 of the Code, the phrase has generally been interpreted in a Chapter 7 case to refer to creditors of the debtor who have claims against the estate and whose pecuniary interests are directly affected by the bankruptcy proceedings.[2] *See generally Leavell, supra,* 141 B.R. at 399. A determination of whether or not a debtor is a "party in interest" and therefore has standing to sue a trustee on a theory of negligence, depends on a showing by the debtor that he/she has suffered direct harm as a result of the alleged misconduct. *See In re San Juan Hotel Corp.,* 847 F.2d 931, 938 (1st Cir.1988).

██ Standing requires that an individual assert his/her own legal rights and interest. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). A party "cannot rest his claim to relief on the legal rights and interests of third parties." *Id.* The fact that the party may benefit collaterally is not sufficient to warrant invocation of the court's jurisdiction. *Id.*

██ In the context of a Chapter 7 bankruptcy, the courts have found the debtor to have a direct pecuniary interest if the debtor has claimed a right of exemption in estate

property. *See Reich, supra,* 54 B.R. 995; *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),* 5 F.3d 750 (4th Cir. 1993). In *dicta* the court in *Reich* also alluded to the existence of a pecuniary interest if the debtor would have been entitled to a distribution of surplus under Code § 726(a)(6) but for the trustee's alleged negligence. *See Reich, supra,* 54 B.R. at 1002. ("[A]side from his right to exempt property, a debtor has a right to receive a dividend from the liquidation of estate property if all prior classes have been paid.")

A similar argument, with respect to a potential surplus, has been made in support of permitting a debtor to oppose a creditor's claim (*See In re Silverman,* 37 B.R. 200, 201 (S.D.N.Y.1982); *Kapp v. Naturelle, Inc. (In re Kapp),* 611 F.2d 703, 707 (8th Cir.1979)) or to challenge a court's order regarding the sale of property of the estate (*See generally In re Mark Bell Furniture Warehouse, Inc.,* 992 F.2d 7, 10 (1st Cir.1993)), or to appeal the settlement of an adversary proceeding (*See In re Thompson,* 965 F.2d 1136, 1140 (1st Cir.1992)). However, the general consensus of the courts is that a surplus is highly unlikely in a liquidation proceeding, and, therefore, seeking standing based on a potential surplus is not likely to succeed. *See id.* at 1147; *Reich, supra,* 54 B.R. at 1002. The court in *Thompson* went so far as to indicate that the fact that the settlement did not result in an estate surplus for the debtor was immaterial "except insofar as it tends to corroborate the absence of a direct pecuniary interest on the part of the Chapter 7 debtor in the allowability of the ... claims." *Thompson* at 1147.

The Debtors in the case *sub judice* have not claimed an exemption in the property destroyed in the fire. While the Debtors allege a total value of the Diner and its contents as $275,000, it is evident to the Court that the more realistic value of any proceeds, had the trustee obtained insurance on the property, would have been in the range of $65,000—$75,000, given the previous insurance coverage, combined with the statement in the Debtors' schedules as to the

**2.** This is to be distinguished from a Chapter 11 case where the Code specifically includes the

debtor as a "party in interest." *See e.g.* Code §§ 1109(b) and 1121(c).

value of the contents, and the amount listed in the purchase agreement for the sale of the Diner and its contents. Both the IRS and the Department hold secured and unsecured claims totalling in excess of $100,000, and there is also the $16,500 owed to three secured creditors. Accordingly, the Debtors have failed to establish that assets would have exceeded liabilities, entitling them to a surplus, had the property been insured, and cannot argue for standing on that basis.

▮ Instead, Debtors rely on *Leavell, supra,* 141 B.R. 393 for the premise that a debtor also has standing to sue the trustee if the debtor has incurred liability for penalties and fines as a result of the trustee's alleged negligence. The court in *Leavell* granted standing to the debtor based on the fact that he had incurred personal liability for wells that were not bonded by the trustee. *Id.* at 399. The debtor in *Leavell* provided the court with a copy of a decision from the Illinois Department of Mines and Minerals, Oil and Gas Division, ordering the debtor to provide a bond for the wells and to pay a $225.00 civil penalty. *Id.* The penalty was imposed on the debtor as a direct result of the trustee's failure to bond the wells. In a subsequent appeal brought by the debtor, the district court went one step further in indicating that the trustee himself could be held liable for any violations of state or federal environmental laws that occurred while the property was in the trustee's possession. *See Leavell v. Karnes,* 143 B.R. 212, 219 (S.D.Ill.1990).

In the case *sub judice,* the Debtors allege that but for the Trustee's failure to insure the Diner and its contents, the amount due and owing the tax authorities would have been paid out of the estate and the liability of the Debtors for the taxes, as well as any penalties and interest, would have been reduced. However, there has been no argument that the Trustee is, in any way, liable for the penalties and interest as a result of his activities in administering the case. It is actually the rights of the taxing authorities that the Debtors are championing, rather than their own. As such, the Debtors' interest, although indirectly pecuniary, is "remote and consequential rather than direct and immediate." *See Sec. & Exchange Comm'n v. Sec. Northwest, Inc.,* 573 F.2d 622, 626 (9th Cir.1978) (Officer of the corporate debtor was found to lack standing to object to the priority given by the trustee to certain tax claims owed by the debtor which would have reduced the officer's own personal liability.)

▮ It is the determination of this Court that the Debtors lack standing to sue the Trustee. To hold otherwise would be to open the floodgates for debtors to object to actions taken by the trustee simply because there is the remote possibility that the debtor's personal liability for nondischargeable debts would be reduced. The trustee's efforts should be focused on managing the estate assets in such a way as to maximize their distribution to all creditors. In the situation where a debtor has claimed an exemption or has established that the assets will exceed the liabilities, thus entitling him/her to a surplus, the debtor can be said to stand in the shoes of a creditor. So too in *Leavell* the debtor was simply asserting a personal claim which arose post-petition as a direct result of the trustee's failure to bond the wells and for which the trustee was also found to be potentially liable. In this instance, the Debtors have no direct claim against either the Trustee or the estate. To rest their claim to relief on the interests and rights which may be held by the taxing authorities in maximizing the recovery from the estate does not constitute a basis for standing to sue the Trustee or the bonding company.

For the above reasons, it is hereby

ORDERED that the motion of the Defendants for summary judgment as to the issue of standing be granted; and it is further

ORDERED that the complaint filed in this adversary proceeding be dismissed.